No. 11,089.

CITIZENS BANK OF LOUISIANA VS. HEIRS OF GERONIMO JORDA.

ON DEMAND IN NULLITY OF RUDOLPHO MATAS, DATIVE EXECUTOR.

The Cit zens Bank, which has accepted a proposal to compromise a mortgage debt under Act 79 of 1880, has a right to disregard the proposal and acceptance when the debtor abandons the proposition made and to sue out executory process on the original debt. The abandonment will be presumed when the debtor delays for an unreasonable length of time to pay the amount agreed upon; neglects to redeem the property which had been sold for taxes; collects rents to a large amount and fails to appropriate them to the payment of the amount agreed upon; when the only effort made to secure and pay the amount is an effort to negotiate a loan on the identical property mortgaged to the bank. In such a case the proposal to compromise was speculative and not made with the *bona fide* intention of relieving the property of the bank mortgaged, as contemplated by Act 79 of 1880.

A universal legatee, where there are no heirs entitled to a portion of the property reserved to them by law, is by the death of the testator seized of right of the succession property, and a notice of demand of payment under executory process can be made on his duly authorized agent in possession of the property, appointed after the death of the testator, although the succession has not been formally opened and an executor appointed.

Bank vs Heirs of Jorda.

Mortgaged property sold for taxes must be redeemed by the mortgagor before he can bring an action to annul the sale made under executory process.

A
APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Henry Denis*, for the Citizens Bank of Louisiana, Defendant and Appellant, cited: Troplong, Des Transactions, p. 551; Laurent, Vol. 28, p. 333; Parsons on Contracts, 6th Ed., Vol. 2, Sec. 687; Wharton, Contracts, Vol. 2, Sec. 997; 11 Rob. 209; 1 An. 119; 2 An. 526; 2 An. 606; 1 An. 204; 32 An. 412; 32 An. 249.

*Gus A. Breaux* and *Bernard McCloskey* for the Dative Executor, Appellee:

1. Foreclosure proceedings against an estate, though granted by charter to banks, must nevertheless be conducted according to law as to notices, forms, etc. Failure to observe these import nullity of sale. Bank vs. Marigny, 11 Rob. 211.

2. Foreign executors without power to act or represent estate until appointed and qualified in this State. Hennen's Dig., *verbo* Succ., IX (6) 1, 8 pp. 1524-25.

3. When a compromise has been agreed upon, and a time has been assented to to secure necessary procuration from an absent owner to carry it out, the creditor can not disregard the compromise without notice and giving an opportunity to execute it.

4. Intervening death and control over administration of a party to a compromise without fixed term is sufficient excuse for delay of execution.

The opinion of the court was delivered by

McENERY, J. Jorda, the deceased, was a resident of Spain. He was a stockholder in the Citizens Bank. In December, 1890, he owed a contribution of $2 per share, levied annually, and amounting, with interest, to over $5000. By Act 79 of 1880, the Legislature authorized the Citizens Bank to make compromises and settlements with the mortgage stockholders in order to enable them to free the real estate from the special mortgage securing the shares.

Jorda owned property in the city of New Orleans, upon which there was a mortgage securing the shares of which he was the owner. The agent appointed to administer the property made a proposition, in pursuance of said act, to compromise the mortgage debt with the Citizens Bank for the sum of $9000. This proposition for compromise the bank accepted. But it appears that the principal, Jorda,

had not authorized this proposition; but when it was made known to him that the bank had accepted the proposal made by his agent, he ratified and confirmed the same.   Before the power of attorney reached his agent in the city of New Orleans he died, leaving a will, which was probated and ordered executed here, and a dative testamentary executor was appointed.   The public administrator applied for authority to administer the property here, and there was delay in consequence of this litigation.

Executors were appointed under the will, and letters testamentary issued to them in Spain, but they were not qualified here.   Jorda made some special legacies, and instituted as his heir and universal legatee Sicars Y. Palau.   Salvador Roca y Carreras was appointed special heir to the property in New Orleans with the universal legatee.   He and Sicars Y. Palau, the universal legatee, were appointed executors.   The former was named as special heir also of the property situated in the city of New Orleans.

On the 29th day of March 1891, Sicars Y. Palau, the universal heir, and Salvador Roca y Carreras, the special heir to the New Orleans property, and both executors, executed a power of attorney, appointing Rudolpho Matas and Carlos Maduel agents to administer the property for them in the city of New Orleans.   In this procuration they recite: " They give power ample and requisite as may be necessary * * * in order that jointly and separately they may administer the property belonging to and left at his death by Mr. Jorda * * * to rent the same and collect the rental   * * *   And should it become necessary to appear before any municipal judges, tribunals, courts and other competent authorities, as well prosecuting as defending, to enter into verbal suits and acts of conciliation; to agree or not and in due course to appeal before whom it may concern; to institute, follow and direct every kind of suits and judicial proceeding, ordinary, and special, civil and criminal causes, proceedings of voluntary jurisdiction with their ample and customary course; to present demands, answers and all writings, documents, witnesses and other means of proof; to pay for summons and executions, sequestrations, seizures and their cancellation; the sale and adjudication of property; to oppose and object to; to take notice of orders, sentences and judgment; to accept such as are favorable, and from such as are injurious to appeal and petition, interposing the recourses of complaint, force, nullity and abrogation and others |as are proper, following the suits

through all their instances until their termination; performing as many acts as might the grantors in person, and to that effect they grant unto them the most ample power without any restriction whatever, with power to substitute as to conciliation and suits, revoke such subtitutions and appoint others."

City taxes were due and unpaid on the property from 1882 to 1887 inclusive.

The city seized the property, advertised it and offered it for sale, and it was adjudicated to the city of New Orleans on the 13th October, 1891. The Citizens Bank redeemed the property by paying the taxes, costs and penalties for the years 1882 to 1887 inclusive. The amount was $1136.

The Citizens Bank disregarding and ignoring the proposition made to it by Jorda's agent to compromise the mortgage debt for $9000, on October 27, 1891, sued out executory process against the property and the demand for payment, and notice was served on Maduel and Matas, the agents of Palau and Carreras, on the 28th October, 1891. The mortgaged property was sold and adjudicated to the Citizens Bank.

The dative testamentary executor appointed by the court in Louisiana brought suit to annul the executory proceedings and the adjudication to the bank.

There was judgment for plaintiff and the bank appealed.

The questions presented are: Is the estate of Jorda entitled in law and equity to enforce the compromise made with the bank; was the proceeding by executory process legal and valid during the pending of this compromise, and were the notices under the executory process served on proper parties?

In plaintiff's brief it is stated that "it may be conceded at once that if not entitled to have and receive the benefit of this compromise, then it is without interest to question the legality of the sale under foreclosure."

But notwithstanding this statement the greater part of the brief is devoted to a discussion of the legality of the executory process. Therefore, we do not feel authorized in basing our conclusions exclusively upon the existence or non-existence of the compromise when the executory process issued.

The act of the Legislature referred to authorizing the bank to make compromises and settlements with its mortgage debtors was intended

primarily to relieve the property subject to said mortgages free of the same. A contract with its mortgage debtor would therefore be binding, and if the debtor should die immediately after his proposition was accepted by the bank, his estate would undoubtedly have the benefit of it if acted upon promptly by the heirs or legal representatives of the succession. But the act contemplates that the party who makes the proposal to compromise will be in a position to execute his part of the agreement. It was not intended that the proposal when accepted should have its execution indefinitely postponed. This would defeat the intention of the act, which was also to benefit the bank by enabling it to realize promptly from property burdened with the bank's mortgage.

It does not appear that Jorda was aware of the proposal made by his agent to the bank, and it seems that the bank was not informed of the fact that Jorda, who resided in Spain, had not authorized the proposal.

The bank evidently accepted the proposal on the assumption that the agent was duly authorized and was prepared to pay the amount. But it appears from the record that the scheme of the agent was speculative. His plan was to raise money by mortgaging the identical property burdened with the bank mortgage, and therefore he was compelled to communicate with his principal in Spain to get authority to specially mortgage the property to raise the fund necessary to pay the $9000 to the bank.

In the meantime the property was rented for $150 per month, and the agent collected the rent, and failed in any effort to carry out the proposition of compromise.

The rents were collected when the sheriff seized the property, ten months after the proposal had been accepted by the bank. The agent of the universal legatee and the "special heir" to the property never communicated the proposition to their principal, or in any way through them, or by their own effort attempted or made any effort to pay the amount to the bank. It is not certain even that their principals, the legatees, knew anything of the proposition, except it might be inferred that they read the correspondence between Jorda and his agent.

If the bank was required, under the circumstances of this case, to put the legatees or heirs in default, we are of the opinion that it was done when the demand was made to pay the mortgage debt.

If there was any serious intention of acting in good faith and paying the amount, a tender of the amount ought to have been made before resorting to the action of nullity, where the pendency of the compromise was one of the grounds of complaint.

Under the peculiar circumstances of this case, we think the bank had good reasons for believing that there would be no effort made to pay the amount agreed upon, and that the proposition had been abandoned, and it therefore had a right to enforce the original mortgage debt.

We have quoted at length from the power of attorney given by the universal legatee and "special heir" to administer the New Orleans property.

It will be useless to discuss the scope of the authority given. It is ample for all purposes of administration, and for all appearances in litigation. These agents were in possession of the property for their principals, both in law and in fact, when the notice of demand for payment was served on them.

It is contended by plaintiff that a legatee or heir can not be treated as such until he has evidenced in some form his intention to accept the inheritance. This proposition can not be questioned, when there is an attempt made to hold him responsible for an acceptance pure and simple. C. C. 998; 26 An. 417. But in this case there is no attempt made to hold the heir liable for an act of acceptance pure and simple, to fasten upon him a liability as heir. He is pursued only in a representative capacity, as being of right seized of the succession property, such as it may be. C. C. 874. "He who is called to the succession, being seized thereof in right, is considered the heir as long as he does not manifest the will to divest himself of that right by renouncing the succession." C. C. 1014.

Jorda left no heirs to whom a portion of his property is reserved by law. His universal legatee, Palau, was, therefore, by the death of the testator, seized of right of the effects of the succession without being bound to demand the delivery thereof. C. C. 1609.

The universal legatee, Palau, was at the death of Jorda seized of the succession effects to the extent that the testator was in his lifetime.

It has long been held that it is not necessary to open a succession by the appointment of an administrator in order to seize and sell property specially mortgaged. 1 An. 204; 32 An. 249.

The universal legatee could therefore give a power of attorney to administer property situated in this State. The agent appointed by the universal legatee was in possession of the property when the demand for payment was served on him. He fully represented, under the procuration, the universal legatee for all purposes.

The charter of the bank authorizes the corporation to seize and sell property specially mortgaged to it in the possession of a third party.

The law has been fully complied with in this case in regard to the notice, seizure, advertisement and sale and adjudication.

The mortgaged property was sold for city taxes and bought in by the city; the bank, the mortgage creditor, redeemed the same. Until this sale and redemption are set aside, the plaintiffs are really without interest to attack the sale to the bank under the executory proceeding.

It is therefore ordered, adjudged and decreed that the judgment appealed from be avoided, annulled and reversed, and it is now ordered and decreed that there be judgment for the defendant, dismissing plaintiffs' demand at their costs.