(91 South. 149)

No. 23188.

## SCHREIBER v. BEER'S WIDOW AND HEIRS.

(May 30, 1921. On Rehearing, Jan. 2, 1922.)

*(Syllabus by Editorial Staff.)*

**1. Descent and distribution ☜146 — Succession; petition to hold heir for debts must allege acceptance of succession.**

Under Civ. Code, arts. 1055–1057, and Code Prac. arts. 924, 977, 979, 980, authorizing suits by creditors to compel the heirs to accept or renounce the succession, an heir cannot be considered to have accepted the succession so as to be bound individually to pay the debts unless he has expressly accepted or tacitly accepted as provided by those sections, and an allegation of such acceptance is essential to state a cause of action against him individually for the debts of the succession.

**2. Husband and wife ☜273(4)—Widow not liable for community debts until acceptance of community estate.**

Under Civ. Code, art. 2414, and Act No. 4 of 1882, a widow is not liable for half the community debts unless she has accepted half of the community estate under the rules governing acceptance of the succession by the heirs.

**3. Husband and wife ☜273(3) — Inventory unnecessary to preserve right to renounce succession.**

Though it is presumed that inventory was not taken where it is alleged that the succession was not opened, it is not necessary that inventory should have been taken, if it is not shown that the widow or heirs took possession of the estate, to preserve the right of the widow to renounce the community whenever called upon to accept or renounce by a suit under Civ. Code, arts. 1014, 1055, and Code Prac. arts. 977, 979.

**4. Descent and distribution ☜119(2)—Husband and wife ☜273(3)—Succession; failure to renounce succession within 30 days does not raise presumption of acceptance.**

An heir who has not renounced the succession within 30 days, or a widow who has not renounced the community within that time, is

not presumed to have accepted so as to be liable individually for a suit on a debt of the succession of the community, without being first sued to compel an acceptance or renunciation.

**5. Descent and distribution ⊂⊃119(2) — Succession; provision for judgment against heir construed with provision for election by heir to accept or renounce.**

Civ. Code, art. 1000, making an heir liable as such if, when cited for a debt of the deceased, he allows judgment to go against him as heir, without claiming the benefit of inventory or renouncing the succession, must be read in connection with article 1055 and Code Prac. arts. 977, 979, prescribing the method by which an heir may be compelled to elect to accept or renounce the succession.

**6. Descent and distribution ⊂⊃119(2) — Succession; heir who has not renounced may be cited in suit against succession.**

Civ. Code, arts. 940–942, 1014, declaring that an heir, being invested with seizin, by operation of law, at the death of the ancestor, is considered the heir so long as he has not renounced the succession, must be read in connection with article 946, declaring that the heir's right remains in suspense until he decides either to accept or to renounce, so that an heir who has neither accepted or renounced the succession is considered the heir for the purpose of being cited and of standing in judgment in a suit against the succession, or in an action to compel him to declare whether he will accept or renounce, under Civ. Code, art. 1055, and Code Prac. arts. 977 and 979, but an heir is not presumed liable for the debts of the succession merely because he has not formally renounced.

Provosty, C. J., and Baker, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Suit by Mrs. Jeanne C. L. Schreiber against the widow and heirs of Ferdinand Beer to revive a judgment against the succession and to obtain a judgment against the widow and heirs individually for the debt represented by the judgment. Suit dismissed on an exception of no cause of action, and plaintiff appeals. Judgment annulled, and judgment rendered sustaining the exception as against the demand for personal judg-

ment, but overruling it as to the demand of revival against the succession.

W. O. Hart, of New Orleans, for appellant.

Beer & Robbert, of New Orleans, for appellees.

PROVOSTY, J. Plaintiff, Mrs. Jeanne Schreiber, sues the widow of Ferdinand Beer as survivor in community, and his children, issue of his marriage, as his heirs, to revive a judgment heretofore rendered against him. The petition not alleging that the defendants respectively have accepted the community and the succession, an exception of no cause of action was sustained below.

Such an allegation was unnecessary. What the law presumes to exist need not be alleged; and, when the community is dissolved by the death of the husband, the widow is presumed to have accepted unless she has renounced. Ludeling v. Felton, 29 La. Ann. 721; Audrich v. Lamothe, 12 La. Ann. 77; Snoddy v. Brashear, 13 La. Ann. 470; Bank v. Jorda, 45 La. Ann. 189, 11 South. 876. In Edwards v. Ricks, 30 La. Ann. 928, the court said:

"The same rules are applicable to the wife's acceptance or renunciation of the community, when terminated by death of the husband, except that she cannot accept under benefit of inventory. She is presumed to accept if she does not expressly renounce."

So far as the heirs are concerned, the Code itself is explicit on the point of their standing in the shoes of the de cujus until they have renounced. Articles 940, 941, 942 and 1014, read:

"Art. 940. A succession is acquired by the legal heir, who is called by law to the inheritance, immediately after the death of the deceased person to whom he succeeds. * * *

"Art. 941. The right mentioned in the preceding article is acquired by the heir by the operation of the law alone, before he has taken any step to put himself in possession, or has expressed any will to accept it. * * *

"Art. 942. The heir being considered seized of the succession from the moment of its being opened, the right of possession, which the

deceased had, continues in the person of the heir, as if there had been no interruption, and independent of the fact of possession."

"Art. 1014. He who is called to the succession, being seized thereof in right, is considered the heir, as long as he does not manifest the will to divest himself of that right by renouncing the succession."

Article 1000 of the Code presupposes that a legal heir may be sued as such before he has accepted, for it says that when sued as heir "he makes himself liable as heir" unless in his defense to the suit he renounces the succession or claims the delay for deliberating whether to accept. The article reads:

"Art. 1000. The person called to the succession does an act, which makes him liable as heir, if, when cited before a court of justice as heir for a debt of the deceased, he suffers judgment to be given against him in that capacity, without claiming the benefit of inventory, or renouncing the succession."

If the widow in community and the legal heirs could not be sued as such until they had accepted, a creditor of the de cujus would have to bring two suits—one of inquiry, whether they accept or not; and, after judgment decreeing them to have accepted, then another suit to compel payment. The law contemplates no such idle circumlocution as this. Before acceptance, the widow and the heirs possess fully and completely the qualities of widow in community and legal heirs; hence they may be sued in these qualities.

Learned counsel for defendants argue that the right of an heir is in suspense until acceptance or renunciation; and in that connection they quote article 946, reading:

"Art. 946. Though the succession be acquired by the heir from the moment of the death of the deceased, his right is in suspense, until he decide whether he accepts or rejects it.

"If the heir accept, he is considered as having succeeded to the deceased from the moment of his death; if he rejects it, he is considered as never having received it."

But what is meant here by being "in suspense" is no more than that the right as heir or the obligation as such is not finally fixed, not that it does not exist. Certainly the heir is not finally liable, and may still renounce; but in the meantime he is heir, and may be sued as such, and thereby be placed under the necessity of pronouncing himself at once upon acceptance or renunciation.

On the other hand, the learned counsel for plaintiff argues that by pleading to the suit without having renounced the defendants have, under operation of said article 1000, forfeited their right to renounce. But the question of whether the defendants have accepted or renounced does not come up on this exception of no cause of action. The only question that comes up is whether a widow in community, when the community has been dissolved by death, and legal heirs, may be sued without an allegation being made of their having accepted the community or the succession. The question of whether they have in fact accepted or not is one that can come up only after they have made a plea of having renounced and of consequent nonliability.

The judgment appealed from is set aside, the exception of no cause of action is overruled, and the case is remanded for trial; the defendants to pay the costs of this appeal.

O'NIELL, J., dissents.

## On Rehearing.

O'NIELL, J. This suit was brought to revive a judgment for $20,000 against the succession of the late Ferdinand Beer, and to obtain a judgment against his widow and heirs individually for the debt represented by the judgment. The widow, individually, is sued for $10,000; the allegation being that the debt was contracted during the marital community. Each of the five heirs of the deceased, being his three sons and two daughters, is sued for $2,000.

The suit was dismissed on an exception of no cause of action, because plaintiff did not allege that the widow had accepted the community, either expressly or tacitly, or that the heirs had accepted the succession, either expressly or tacitly, or that any of the defendants had signed or done anything indicating an intention to accept, or that their right to renounce was lost by prescription.

On the original hearing of plaintiff's appeal from the judgment dismissing her suit, a majority of the members of this court were of the opinion that the widow was presumed to have accepted the community, and that the heirs were presumed to have accepted the succession of the deceased. The court therefore concluded that the heirs, who had neither accepted nor renounced the succession, or the widow, who had neither accepted nor renounced the community, might be sued and held liable individually for a debt of the deceased or of the community, as the case might be, without being first compelled by suit to accept or renounce.

[1] After a more careful consideration of the subject, we have concluded that the provisions of the Civil Code and of the Code of Practice with regard to the obligations of an heir who has accepted a succession, either expressly or tacitly, or of a widow who has accepted the community, would have little or no meaning if it were true that the mere failure of an heir to renounce the succession should render him liable individually for the debts of the succession, and if it were true that the mere failure of a widow to renounce the community should render her liable individually for one-half of the debts of the community. If the framers of the Civil Code had intended that an heir who had neither accepted nor renounced the succession should be deemed liable for the debts of the succession, such a provision would have been written in the Code; and it would be entirely inconsistent with the rules for determining what acts on the part of an heir shall and what shall not render him liable individually for the debts of the succession. On the contrary, article 1055 of the Civil Code declares that at the expiration of the term (30 days) allowed an heir for deliberating the creditors and legatees of the succession, by bringing suit for that purpose, "can compel the heir to decide whether he accepts or rejects the succession."

Article 1056 declares that if, in answer to such suit, the heir declares that he accepts the succession, the estate must immediately be delivered to him, and he then becomes responsible personally for the debts of the succession, not only to the extent of the value of the estate, but to the full extent of its obligations; "and the creditors of the deceased can obtain judgment against him." Article 1057 declares that, if the heir allows a judgment to go by default in such a suit, "he shall be considered an unconditional heir and be bound as such."

Article 924 of the Code of Practice declares:

"Courts of probate have the exclusive power * * * to compel such heirs as have taken time to deliberate to declare, when required by the creditors of deceased, whether they accept or renounce the succession."

Article 977 of the Code of Practice, substantially like article 1055 of the Civil Code, declares that the creditors or legatees of a deceased person, or any of them, may, by a suit brought for that purpose, "demand that the beneficiary heir be cited and made to declare whether he accepts or refuses the succession." Article 979 declares that, if the presumptive heir has not prayed for time to deliberate, any creditor or legatee of the deceased may, ten days after the opening of the succession, "cite such heir to appear before the judge of probate, and call on him to declare whether he accepts the succession or refuses it." And article 980 declares:

"If the heir thus cited declares that he accepts, or if he be silent or make default, he

shall be considered as having accepted the succession purely and unconditionally, *and may be sued as if he had done so.*" (The italics are by the court.)

It appears, therefore, that an heir cannot "be considered as having accepted the succession," or "be sued as if he had done so," unless he has accepted the succession, unconditionally either expressly or tacitly, or has allowed a judgment to go against him by default in a suit to compel him "to declare whether he accepts the succession or refuses it." There is reason in the requirement of the law that an heir who has not accepted the succession, either expressly or tacitly, should not be sued individually for any particular debt of the deceased until the question of responsibility of the heir for the debts of the succession generally has been established by a judicial decree; for the heir, individually, is not concerned with any debt or obligation of the deceased, unless the heir is personally or individually responsible for the debts and obligations of the deceased.

[2] Article 2414 of the Civil Code declares that a widow is allowed the same delay for deciding whether she will accept or renounce the marital community that is allowed a beneficiary heir for deciding whether he will accept or renounce the succession; and that "after the expiration of these delays she may be, in the same manner, forced to make her decision, and judgment may be rendered against her as a partner, unless she renounces."

Act 4 of 1882 declares:

"That at the dissolution for any cause of the marriage community, it shall be lawful for the wife to accept the community of acquêts and gains under the benefit of inventory, in the same manner and with the same benefits and advantages as heirs are allowed by existing laws to accept a succession under the benefit of inventory."

In Herman v. Theurer, 11 La. Ann. 70 (in 1856), it was said:

"Where the community is dissolved by the death of the husband, the surviving wife is presumed to have *the intention to accept,* * * * *and her right to renounce is subject to the same rules as govern the beneficiary heir.* But a different rule prevails where a divorce has been pronounced. Unless the wife accepts the community within the delay allowed by law, or obtains from the judge a prolongation of that delay, she is supposed to have renounced the community. Code, 2389." R. C. C. 2420. (The italics are by the court.)

It is plain, therefore, that the question of responsibility of a widow for one-half of the community debts is governed by the same rules, and must be determined by the same method, that the Civil Code and the Code of Practice have established for determining the responsibility of the beneficiary heir for the debts of the succession. The rule, however, before the enactment of the statute of 1882, was not the same when the marital community was dissolved by a judicial decree. In that case, by the terms of article 2420 of the Civil Code, if the wife did not accept the community within the prescribed time, she was supposed to have renounced it irrevocably.

In the Succession of Richardson, 14 La. Ann. 1 (in 1859) where the widow had taken possession of the community estate, having had an inventory taken of the property, a creditor of the community contended that the widow was presumed to have accepted the community, because she had not renounced it within the prescribed delay, and that she was therefore liable for the community debts and could not assert her paraphernal claim against them. But the court ruled that the taking of an inventory of the community property counteracted the presumption that might otherwise have resulted from the widow's taking possession of the property. The court said:

"In the present case it appears that the widow caused an inventory to be taken, and, as the creditors have taken no steps to compel her to accept or renounce, we think she still has the privilege of renouncing the community.

But this privilege would be of no value, unless she had the right of enforcing her paraphernal claims against the estate of her husband in the interim. So long as she has a right to renounce, she cannot be charged as a partner. C. C. 1043 [now 1050], 1048, 2383 [now 2414]; C. P. 980, 982."

The doctrine of the decision last quoted is expressed in the syllabus thus:

"Where the widow has caused an inventory to be taken of her deceased husband's estate, she has the privilege of renouncing the community, as long as the creditors have taken no steps to compel her to accept or renounce."

[3] In the case before us it is alleged that the succession was not opened; hence it is presumed that an inventory was not taken. But, as it is not alleged that the widow or heirs took possession of the estate, it is not necessary that an inventory should have been taken, to preserve the right of the widow to renounce the community, or of the heirs to renounce the succession, whenever called upon to accept or renounce, by a suit brought under the provisions of articles 1055 and 2414 of the Civil Code and articles 977 and 979 of the Code of Practice.

In the case of Titche v. Lee, Administratrix, 22 La. Ann. 435 (in 1870), the plaintiff proceeded, as in the present case, to obtain a judgment against the succession of the deceased debtor and also a personal judgment against the widow, individually, for half of the community debt. Plaintiff alleged that, inasmuch as the widow had not renounced the community within the 30 days allowed her for deliberating, she was presumed to have accepted the community, and was therefore responsible individually for half of its debts. The ruling was that the plaintiff had a right of action against the succession of the deceased husband, but not against the widow individually, because the suit was not brought in the form of an action, under articles 1055 and 2414 of the Civil Code and articles 977 and 979 of the Code of Practice

to compel the widow to decide whether she would accept or renounce the community. The court said:

"The pleadings and evidence do not justify the *personal* judgment appealed from, nor do we feel authorized, *in this form of action, to render the judgment contemplated in article 2383, C. C.*" Article 2414 Rev. Civ. Code. (The italics are by the court.)

The doctrine of the decision quoted is expressed in the syllabus thus:

"The surviving wife has 30 days within which to make a choice between renouncing and accepting the succession of her husband. But after this delay she still has the right of renunciation, which is continuous until she has been compelled by an action to make the choice. Therefore no personal judgment can be rendered against her until the action by the creditor, to compel her to make the choice, has been passed upon."

In Mumford v. Bowman, 26 La. Ann. 413 (in 1874) the court announced very rigid rules for determining whether any particular writing or conduct on the part of an heir should be construed as an acceptance of the succession, having the effect of binding the heir for the debts of the deceased, viz.:

"The acceptance of a succession is express, when in an authentic act or private instrument, or in some judicial proceeding, the purpose of the heir is declared in terms so clear and distinct that no doubt can exist of his intention to accept under the responsibilities that result from an acceptance pure and simple. To incur the liability arising from an acceptance pure and simple, something more than styling himself heir in some written act, authentic or judicial, must appear in the instrument, in order to bind the party absolutely to pay all the debts of the succession out of his own means.

"Both in the express and tacit acceptance it must be made clear that it was the intention of the party assuming the quality of heir to abide the disadvantages, if any should arise, of accepting simply and purely, as well as to enjoy the benefits that might accrue from it. In the one case the intention is to be found in a fair interpretation of the terms and expressions of written instruments; in the other it is to be inferred from acts, the motives of which cannot be ascribed to any other purpose."

In Griffin v. Burris, 109 La. 216, 33 South. 201, it was held:

"Where there is no claiming of anything by those styling themselves heirs, no affirmative action by them in assertion of the rights of heirship or ownership, no obliging themselves as heirs, or contracting as heirs, acceptance of the succession cannot be inferred against them."

[4] An analysis of the decisions cited in appellant's brief and in the original opinion rendered herein, and an analysis of the decisions referred to in the cases cited, discloses that they do not maintain that an heir who has not renounced the succession within 30 days or a widow who has not renounced the community within 30 days is presumed to have accepted and may be sued individually for a debt of the succession, or of the community, as the case may be, without being first sued to compel an acceptance or renunciation of the succession or of the community, in the method provided by articles 1055 and 2414 of the Civil Code and by articles 977 and 979 of the Code of Practice.

In the Succession of Dejean, 5 La. Ann. 594, the ruling was merely that the widow could not assert her paraphernal claim against the marital community, to the prejudice of other creditors of the community, without having renounced the community. The reason, obviously, was that, as a member of the dissolved community or partnership, the widow would be responsible for its debts and therefore could not set up her claim against the claims of other creditors of the community or partnership.

Audrich v. Lamothe, 12 La. Ann. 76, is authority for the proposition merely that a widow who had obtained a separation of property during the lifetime of her husband was not presumed to have accepted the community after her husband's death merely because she did not have an inventory taken. It was also held in that case that the heirs were not personally responsible for the debts of the succession without proof that they had accepted it, either expressly or tacitly.

In Snoddy v. Brashear, 13 La. Ann. 469, the ruling was that a widow who had obtained a separation of property during the lifetime of her husband, without having either accepted or renounced the community within the time prescribed by law, was not presumed to have accepted the community after her husband's death.

In Decuir v. Lejeune, 15 La. Ann. 569, and in the Succession of Ewing, 15 La. Ann. 416, the ruling was that a divorced wife who had not accepted the community within the time allowed, was, by the terms of article 2420 of the Code, supposed to have renounced it.

Ludeling v. Felton, 29 La. Ann. 719, is authority for the doctrine that a widow who sells a part of the community property for her own individual account and benefit thereby tacitly accepts the community and becomes personally liable for half of its debts. It was said, in the course of the opinion, that, when a marital community was dissolved by the death of the husband, the widow who had not formally renounced the community was, at the expiration of 30 days, presumed to have accepted it, although, when a marital community was dissolved by a judicial decree, the wife was supposed to have renounced if she had not accepted the community within the time prescribed. What was said with regard to the effect of a widow's failure to renounce the community within the prescribed time was not altogether appropriate to the decision. The court was merely illustrating that a wife who was separated from her husband by a judicial decree was governed by article 2420 of the Civil Code, declaring that, if she had not accepted the community within the time fixed, she was supposed to have renounced it, which supposition or presumption had no application to a widow who was not separated from

her husband by a judicial decree. What the court meant to say was that a widow's failure to either accept or renounce the community within the 30 days, unlike the failure of a wife separated by judicial decree, in that respect, did not deprive her of the right either to accept or to renounce the community. Hence it was said that, when the surviving wife did, after her husband's death, accept the community, the effect was the same, whether she was or was not previously separate in property by a judicial decree. The case was decided before the enactment of Act 4 of 1882, which makes no distinction between a dissolution of the community by death of the husband and a dissolution by judicial decree.

Edwards v. Ricks, 30 La. Ann. 926, is authority for the proposition that among the debts and obligations for which the widow and heirs of a deceased debtor render themselves personally liable by an acceptance of the succession are included claims for actual damages, but not for punitive damages, resulting from a tort that was committed by the deceased.

The decision in Weller v. Von Hoven, 42 La. Ann. 600, 7 South. 702, was merely an announcement of the text of article 2420 of the Civil Code (before the enactment of the statute of 1882) that a wife who was separate from bed and board, who had not, within the prescribed delay, accepted the community, was supposed to have renounced it, unless, within the prescribed delay, she had obtained from the judge a prolongation of the time, after the husband had been cited and heard.

In Citizens' Bank v. Heirs of Jorda, 45 La. Ann. 184, 11 South. 876, the ruling was that the universal legatee of a deceased mortgagor was the proper person on whom to serve the demand for payment and the notice of seizure in executory proceedings against the mortgaged property. The suit was an action to annul the sale resulting from the executory proceedings, on the ground, among other grounds, that the universal legatee, not having formally accepted the succession, had not authority to stand in judgment as its representative. The court stressed the fact that the executory process was not a personal action against the legatee, but merely an action against the property of the succession; hence it was said:

"It is contended by plaintiff that a legatee or heir cannot be treated as such until he has evidenced in some form his intention to accept the inheritance. This proposition cannot be questioned, when there is an attempt made to hold him responsible for an acceptance pure and simple. C. C. 998; Mumford v. Bowman, 26 Ann. 417. But in this case there is no attempt made to hold the heir liable for an act of acceptance pure and simple, to fasten upon him a liability as heir. He is pursued only in a representative capacity, as being of right seized of the succession property, such as it may be. C. C. 874.

" 'He who is called to the succession, being seized thereof in right, is considered the heir as long as he does not manifest the will to divest himself of that right by renouncing the succession.' C. C. 1014."

The ruling in Generes v. Bowie Lumber Co., 143 La. 811, 79 South. 413, repeated in the companion case of Bendernagel v. Foret, 145 La. 115, 81 South. 869, was that a forced heir who had not renounced the succession stood to lose by the prescription of 30 years, according to article 1030 of the Civil Code, only the right to renounce, although an heir who has renounced the succession stands to lose, by the prescription of 30 years, only the right to accept, subject, of course, to the conditions prescribed in article 1031 which are: (1) That the succession has not been accepted by other heirs; and (2) that rights acquired by third persons, either by prescription or by lawful dealings with the succession representative, shall not be preju-

diced. It was not held, in either of those cases, that an heir who had not renounced the succession was within the period of 30 years presumed to have accepted, and might be held liable personally for a debt of the deceased, without having been proceeded against by the method provided in article 1055 of the Civil Code and in articles 977 and 979 of the Code of Practice to compel the heir to elect whether he will accept or renounce the succession.

[5] It is true article 1000 of the Civil Code declares that an heir becomes liable as such if, when cited before a court of justice as heir for a debt of the deceased, he allows judgment to go against him in that capacity, without claiming the benefit of inventory or renouncing the succession. But that article must be read in connection with article 1055 of the same Code, and articles 977 and 979 of the Code of Practice, prescribing the method by which an heir may be compelled to elect whether he will accept or renounce the succession. It was so decided, plainly, in Titche v. Lee, supra, and in Citizens' Bank v. Heirs of Jorda, supra.

[6] Articles 940, 941, 942, and 1014 of the Civil Code, declaring, substantially, that an heir, being invested with seizin or the right of possession of the estate by the mere operation of law immediately at the death of the ancestor, is considered the heir so long as he has not renounced the succession, must be read in connection with article 946, declaring that, although the succession is acquired by the heir at the moment of the death of his ancestor, the heir's right, nevertheless, remains in suspense until he decides whether he will accept or renounce the succession. In other words, so long as the heir has not renounced the succession, he is considered the heir for the purpose of being cited and of standing in judgment in a suit against the succession, as such, if there is no adminis-

trator or other such representative of the succession; and the heir who has neither accepted nor renounced the succession is likewise considered the heir for the purpose of being cited in an action to compel him to declare whether he will accept or renounce the succession, under article 1055 of the Civil Code and articles 977 and 979 of the Code of Practice. But an heir is not deemed liable personally for the debts of the succession, merely because he has not formally renounced, until his liability is fixed by the prescription established in article 1030 of the Civil Code.

Our conclusion is that the petition in this case discloses a cause of action on the demand to revive the original judgment against the succession, but not on the demand for a personal judgment against the widow and heirs of the deceased debtor.

The judgment appealed from and the judgment heretofore rendered on appeal are annulled, and it is now ordered, adjudged, and decreed that defendants' exception of no cause of action be, and it is hereby, sustained against plaintiff's demand for a personal judgment against the defendants, widow and heirs of the deceased Ferdinand Beer, and the suit against them individually is therefore dismissed, reserving whatever right of action plaintiff may have to proceed according to the provisions of articles 1055 and 2414 of the Civil Code, and articles 977 and 979 of the Code of Practice. It is further ordered, adjudged, and decreed that the exception of no cause of action be, and it is hereby, overruled as to plaintiff's demand to revive only against the succession of Ferdinand Beer the judgment dated the 17th of February, 1908. It is therefore ordered that this case be remanded to the civil district court for further proceedings not inconsistent with the foregoing opinion. The costs of this appeal are to be borne by the succession of Ferdinand

Beer. All other costs are to await the final judgment.

BAKER, J., dissents.

MONROE, C. J. (concurring in decree, but dissenting from certain passages in the opinion handed down). I concur in the decree in this case, but dissent from the statement in the opinion referring to the cases of Generes v. Bowie Lumber Co., 143 La. 811, 79 South. 413, and Bendernagel v. Foret, 145 La. 115, 81 South. 869, which reads:

"It was not held, in either of those cases, that an heir who had not renounced the succession was, within the period of 30 years, presumed to have accepted, and might be held liable personally for a debt of the deceased, without having been proceeded against by the method provided in article 1055 of the Civil Code and in articles 977 and 979 of the Code of Practice, to compel the heir to elect whether he will accept or renounce the succession."

In the opinion in the Generes Case (143 La. 822, 79 South. 416) I find the following:

"At the expiration of the 30 years the status of the person or relation is irrevocably fixed by the prescription established by article 1030 of the Code, either as an heir or not an heir, depending upon what his status was before the 30 years ended. To illustrate: If he was a forced heir, or if he was a legal heir, and there was no forced heir nor universal legatee, he is presumed, if he has not renounced the succession, irrevocably to have accepted it at the end of 30 years, for his right or faculty of renouncing is then prescribed."

And, upon the same reasoning, the same conclusion was reached in the Bendernagel Case (145 La. 132, 81 South. 875), after which it was said:

"With regard to article 1030 of the Code, we adhere to our ruling in the recent case of Generes v. Bowie Lumber Co."

Articles 1030 and 1031 of the Civil Code read:

"Art. 1030. The faculty of accepting or renouncing a succession becomes barred by the lapse of time [30 years] required for the longest prescription of the rights to immovables."

How can the prescription thus declared ever be applied if the heir is always presumed to have accepted within 30 years?

"Art. 1031. So long as the prescription of the right of accepting is not acquired against the heirs who may have renounced, they have the faculty still to accept the succession, if it has not been accepted by other heirs, without prejudice, however, to rights which may have been acquired by third parties upon the property of the succession, either by prescription, or by lawful acts done with the administrator or curator of the vacant estate."

According to the plain language of the law, then the right of the heir either to accept or renounce is barred by his failure to exercise it within 30 years, with the necessary consequence that he then becomes a stranger to the succession, as much so as though he had never been an heir. No one denies that the acceptance of a succession, purely and simply, binds the acceptor for the debts; but it is shown, to a demonstration, by the main opinion herein handed down, that no presumption of acceptance arises from mere lapse of time, and that the acceptance, to be effective, must be in writing and specific, or must be evidenced by acts which plainly indicate the intention to accept. I am therefore of opinion that the doctrine of this case is in direct conflict with that of the two cases hereinabove mentioned, and that it should be so stated, and those cases declared overruled.

PROVOSTY, C. J., (dissenting). This suit is brought 10 years after the death of Ferdinand Beer to revive a judgment obtained against him in his lifetime. It is against his children and heirs for one half and against his widow, as survivor in community, for the other half. Because the petition does not contain an allegation that the heirs have accepted the succession of the decedent, and the widow the community, an exception of no cause of action was sustained below, and, after having been at first overruled by this

court, has on rehearing been sustained. From that conclusion I respectfully dissent.

I cannot better open the discussion than by reproducing here the following from Mourlon's commentary on articles 775 and 777 of the Code Napoléon, the system of heirship there considered and ours being the same:

"In the manner of acquiring the succession the ancient Roman law recognized two classes of heirs: (1) Necessary heirs; and (2) voluntary heirs.

"The necessary heir acquired the succession from the moment it was opened; he acquired it without his knowledge and even against his will; from the moment it is open, it is irrevocably acquired.

"This theory is advantageous in one respect and fatal in another. The necessary heir who has survived the decedent even for one moment transmits the succession to his heirs, confounded with his own. This is the favorable side of the system. But, the necessary heir not being allowed to repudiate the succession and having to pay the debts ultra vires successionis, it is easy to understand how grievous is his position when the succession has more debts than property.

"The voluntary heir acquires the property only if he so desires, and by manifesting the intention to do so; until then he is entitled to become heir, but is not yet such. In other words, he acquires from the moment of the opening of the succession not the inheritance itself, but only the right to acquire it by accepting. It is not the inheritance that comes to him, but he who goes to it.

"This theory has its good and its bad aspect; it allows the heir to reject the succession that is burdensome; in that connection it is more useful than the other; but in another connection it is less so. The voluntary heir who has survived the de cujus and who dies before having accepted does not transmit the inheritance to his own heirs, since he has never acquired it by accepting.

"The Code, by a felicitous combination, has conceived an *intermediate* system which guards against all the dangers and unites all the advantages of the two opposite systems which the Roman law followed.

"The heir is made similar to the necessary heir in that he acquires the inheritance the moment it is opened, even without his knowledge; *le mort saisit le vif.* If he survive the decedent even for a moment only, he transmits the succession to his heirs along with his own. He differs from the necessary heir in this, that he is at liberty to repudiate, that is, to abandon, the inheritance with which the law has invested him. No one is heir who wishes not to be.

"He is made similar to the voluntary heir in the sense that he is not heir despite his will to the contrary. He differs from the voluntary heir in that he acquires the succession even without his knowledge and without needing to accept it.

"The system may be thus formulated: The heir acquires the succession from the moment it is open; he does not need to accept it in order to acquire it; the law accepts it for him; but it allows him not to retain this inheritance which it has thus placed in his patrimony. He is heir etiam ignorans, sed non invitus.

"He is heir not under the suspensive condition of accepting, but under the resolutory condition of renouncing. If he accepts, the resolutory condition under which he was heir having failed, the heirship becomes fixed; the seizin is now definitive, irrevocable. If he renounces, the resolutory condition under which he was heir being accomplished, he is reputed having never been heir; the seizin, the acquisition of the inheritance, is annihilated, not for the future alone, but also for the past. Hence the accepting renders the seizin irrevocable; the renouncing destroys it retroactively."

The foregoing is what article 1014 of the Civil Code means when it says:

"Art. 1014. He who is called to the succession, being seized thereof in right, is considered the heir, as long as he does not manifest the will to divest himself of that right by renouncing the succession."

And the system itself expounded in the foregoing extract is embodied in the following articles of the Code:

"Art. 940. A succession is acquired by the legal heir, who is called by law to the inheritance, immediately after the death of the deceased person to whom he succeeds.

"This rule applies also to testamentary heirs, to instituted heirs and universal legatees, but not to particular legatees.

"Art. 941. The right mentioned in the preceding article is acquired by the heir by the operation of the law alone, before he has taken any step to put himself in possession, or has expressed any will to accept it.

"Thus children, idiots, those who are ignorant of the death of the deceased, are not the less

considered as being seized of the succession, though they be merely seized of right and not in fact.

"Art. 942. The heir being considered seized of the succession from the moment of its being opened, the right of possession, which the deceased had, continues in the person of the heir, as if there had been no interruption, and independent of the fact of possession.

"Art. 943. The right of possession, which the deceased had, being continued in the person of his heir, it results that this possession is transmitted to the heir with all its defects, as well as all its advantages, the change in the proprietor producing no alteration in the nature of the possession.

"Thus the extent of the rights of the deceased regulates those of the heir, who succeeds to all his rights which can be transmitted, that is, to all those which are not, like usufruct, attached to the person of the deceased.

"Art. 944. The heir being considered as having succeeded to the deceased from the instant of his death, the first effect of this right is that the heir transmits the succession to his own heirs, with the right of accepting or renouncing, although he himself have not accepted it, and even in case he was ignorant that the succession was opened in his favor.

"Art. 945. The second effect of this right is to authorize the heir to institute all the actions, even possessory ones, which the deceased had a right to institute, and to prosecute those already commenced. For the heir, in everything, represents the deceased, and is of full right in his place as well for his rights as his obligations."

Article 1014 merely expresses the logical deduction from these articles 940–945, and as the logical deduction from this article 1014 and these articles 940–945 we have articles 1000, 1417, and 1418, which read:

"Art. 1000. The person called to the succession does an act, which makes him liable as heir, if, when cited before a court of justice as heir for a debt of the deceased, he suffers judgment to be given against him in that capacity, without claiming the benefit of inventory or renouncing the succession."

"Art. 1417. Titles which carry execution against the deceased are also executory against the heir personally; nevertheless the creditors cannot obtain execution on them, until ten days after the notification of them be made to the person, or left at the domicile of the heir."

"Art. 1418. The heir, on being notified thereof, may oppose the execution, before the tribunal having cognizance of the matter, on his simple motion; and if he prove that he has claimed the delays for deliberating, the execution shall be suspended until the delays have expired."

This article 1000 says that the heir becomes "liable as heir," i. e., unconditionally, if, "when cited before a court of justice as heir," he does not claim the benefit of inventory or renounce the succession. Therefore he may be sued as heir before he has accepted or become unconditionally bound.

Article 1000 provides for suits via ordinaria; articles 1417 and 1418 for suits via executiva. And these articles contemplate suits brought against the heir before he has accepted.

Cross on Successions, the really only comprehensive analysis of our law of successions we have, says at page 333:

"The rule le mort saisit le vif applies to the passive estate of the deceased, that is to say, his debts, as well as to the actif, or his property. Although the liability of the heir may be destroyed by his renunciation of the succession, or suspended by his acceptance under benefit of inventory, yet the law looks upon him as the debtor at the moment of the opening of the succession. So C. C. 1417 and 1418 provide that titles which carry execution against the deceased are also executory against the heir personally."

Most of the articles composing chapters IV and VI of Book III of our Code, whose headings are "In What Manner Successions are Opened" and "In What Manner Successions are Accepted, and How They are Renounced," which are the articles which govern the matter now under discussion. were taken verbatim from the Code Napoléon. What has been added may be said to have been taken from Toullier on Successions, tit. 1, c. 1, § 3. For, becoming satisfied that while adopting said articles our codifiers had the text of Toullier under their eyes, we need only refer to this text, as, for instance, the following:

"The seizin which the maxim le mort saisit le vif produces is the decedent's right of possession, which continues in the person of the heir. This right, at the instant of the death, and by sole operation of law, passes to the person called to the succession; it passes immediately and without interruption, along with the right to possess, independently of the fact of possession, even before the heir knows of the opening of the succession.

"But the seizin of the heir being only the continuation of the possession of the decedent, it has the same vices as well as the same advantages. * * *

"82. The legal seizin produces two remarkable effects. The first is that at the instant of the death of the decedent it gives to the person called to the succession the right to transfer the inheritance to his own heirs, so that, if he died one instant after him to whom he has succeeded, his heirs would receive the succession of which he is thus seized, even without his knowing it, and they would be thus seized from the moment of his death.

"The second effect is to authorize the heir to institute all the actions, even possessory ones, which the decedent had a right to institute, and to prosecute those already commenced. He is possessor of everything the decedent was possessor of, owner of everything he was owner of, creditor of everything he was creditor of."

I need not translate further, as the first sentence of this last paragraph is reproduced verbatim in the first sentence of article 945 of the Code, and the exact substance of the second sentence is reproduced in said article by the second sentence of the article, reading:

"For the heir, in everything, represents the deceased, and is of full right in his place as well for his rights as his obligations."

This close connection between the text of Toullier and that of the said chapters of the Code throws a direct light on our question: for in the very next section, section 83, Toullier adds:

"The legal seizin which the law thus vests in the heir is not solely for his benefit, but also equally for that of the creditors of the succession. They may, immediately after the death of the decedent, institute against the presumptive heir all the actions they had against the decedent. All the heir can do is to suspend momentarily their effect, or even, by renouncing the succession, put an end to them entirely."

In the majority opinion it is said:

"If the framers of the Civil Code had intended that an heir who had neither accepted nor renounced the succession should be deemed liable for the debts of the succession, such a provision would have been written in the Code."

Article 945 says:

"The heir, in everything, represents the deceased, and is of full right in his place as well for his rights as his obligations."

Satis verborum.

The majority opinion is founded on the theory that article 946 of the Code suspends the operation of the hereinabove transcribed articles of the Code, and that articles 1036–1055 of the Code and articles 977 and 979 of the Code of Practice modify them.

It would be strange if, after having taken the trouble to provide with meticulous particularity as it has done in said articles 940–945 and 1000, 1014, 1417, and 1418 for a system by which the heir steps into the shoes of the decedent without any interregnum whatever, our law should have added a provision by which all this system should be suspended in the sense of being absolutely stayed in its operation until set in motion by acceptance.

The word "suspense" is defined by Webster's New International Dictionary as follows:

"1. State of being suspended.
"2. State of uncertainty; indecision.
"3. Cessation for a time; pause; suspension."

We cannot attribute to this article 946 the meaning of saying that these other articles are in a state of cessation or pause, for a law neither ceases nor pauses in its operation, but operates continuously. The meaning must be simply that the right, while already acquired, is not irrevocably fixed, so

that it is yet in a state of impermanence, or, if you will, uncertainty, or indecision, until acceptance. Thus read, the article harmonizes with the articles of the Code which immediately precede it; otherwise it stands in flat contradiction with them.

Early in our jurisprudence the apparent conflict between these articles came to the attention of this court. In the case of O'Donald v. Lobdell, 2 La. 299, the court, at page 303, said:

"The 940th article of the Louisiana Code declares that the right of the heir is in suspense until he accepts or renounces. Such is also the French jurisprudence on the Napoléon Code; but it is considered in that country that, while the heir is deliberating whether he will irrevocably take the title, he may sue and be sued, on account of the succession, save that in the latter case judgment cannot be rendered against him until the time given by law for his decision expires. The provisions in our Code authorizing the appointment of an administrator do not appear to us to change, in anything, this right in the heir, unless steps are taken by the creditors to have such an officer appointed. Toullier, loco citato, Nos. 83 and 84; La. Code, 1031, 1046, 1034, 1048."

Article 946 of our present Code was number 940 in the Code of 1825.

In Calvit v. Mulhollan, 12 Rob. 258, this court, at page 263, said:

"But it has been urged that, by article 940 of the Civil Code, the right of the heir to the succession is in suspense until he accepts or renounces; and hence it is argued that his right is incomplete, that is to say, that he is not vested with the inheritance so as to entitle him to keep it, unless he declares that he accepts it absolutely. This article immediately follows those which are the basis of our opinion, and which declare, that the heir acquires the succession by the mere effect of the law; and we cannot suppose that the lawmaker ever intended to destroy the effect of the previous provisions, particularly as article 940 recognizes again in positive terms that 'the succession is acquired by the heir from the moment of the death of the deceased.' We understand this article to mean that, although the heir represents the deceased as fully as if there had been no interruption, his right to the inheritance shall only become definitive after he has ac-

cepted it, but that he shall also be at liberty to reject it."

In Davis v. Elkins, 9 La. 135, a contrary view was expressed. But the case was one governed by the Code of 1808, as appears by the following:

"It does not appear that the fictitious being created by the Civil Code of 1808 has been kept alive by any provision of that of 1825. But in our opinion it lived long enough, and represented the ancestors of the plaintiffs a length of time sufficient to give the defendants a title to the property in litigation by prescription."

The provision of the Code of 1808 here referred to is article 74, p. 162. It reads:

"Until the acceptance or renunciation, the inheritance is considered a fictitious being, representing in every respect the deceased, who was the owner of the estate," etc.

Although the very opposite of this is provided for in the most express, explicit terms by the Code of 1825 and by our present Code, the court in that case goes on to hold that the estate does not vest in the heir until acceptance, but is vested in this fictitious being. If this were so, no change would have been wrought by the articles hereinabove transcribed, which, be it noted, were adopted for the very purpose of making a change. The reasoning of the court (entirely academic, by the way, for the case, as shown by the extract supra, was governed by the Code of 1808) is that if the heir continued the person and possession of the decedent, such a thing as a vacant succession would be an impossibility. Hence, argues the court, the effect of article 946 is to paralyze all the other articles by which the heir is seized, etc. The court lost sight of the fact that in the Code Napoléon, upon which our succession system is modeled, there is no provision corresponding with this article 946, and yet that our present codal provisions regarding vacant successions were taken from the Code Napoléon. If any inconsistency ex-

isted between this seizin of the heir and the vacancy of successions within the meaning of the Code, it would be strange that the searching analysis of the French commentators had never found it out. This suffices for demonstrating the utter fallacy of this argument of the supposed inconsistency between the seizin of the heir and the provisions regarding vacant successions. To go into any further consideration of the nonexistence such supposed inconsistency would but incumber unnecessarily the present opinion.

In the passage reproduced by the majority opinion in the present case from the decision in Citizens' Bank v. Heirs of Jorda, 45 La. Ann. 184, 11 South. 876, this court expressed the view that—

"An heir cannot be treated as such until he has evidenced in some form his intention to accept the inheritance."

That case does not seem to have been particularly well considered. The object of that suit was to annul a judicial sale made in executory process proceedings carried on contradictorily with the agent of the heirs. The contention was, among others, that the heirs could not thus be proceeded against personally. The executory process proceedings in question had been in foreclosure of a Citizens' Bank mortgage, a form of mortgage well known to have been the most iron-clad executory title ever devised by the ingenuity of man. The law applicable to the liability of the heirs to be thus proceeded against on such a title was article 1417, supra, which in so many words authorizes the proceeding to be against the heir "personally" when the title is executory, and, as shown by article 1418, so authorizes it before he has accepted. All the court would have had to do for disposing of that point would have been to cite this article. So devoid of all difficulty was this point that Mr. Henry Denis, the very able lawyer of the Citizens' Bank, apparent-

ly did not consider it necessary to cite any authorities upon it, as none are cited in the syllabus of his brief, reproduced in the report of the case.

Another circumstance which shows that the said proposition was announced by the court without very careful consideration having been given to the matter is that the matter was not reasoned out, and no other foundation was laid for the proposition than the citation of article 998 of the Code and the case of Mumford v. Bowman, 26 La. Ann. 417. No other authority was cited in support of it. Now, there was no question in Mumford v. Bowman of an heir being suable or not before acceptance. The sole issue in that case was as to whether a certain intervention which Mrs. Bowman had filed in the proceedings of her father's succession constituted a tacit acceptance. And, so far as the said article 998 is concerned, it simply formulates the principle that conservatory acts do not constitute tacit acceptance. All this, needless to say, has nothing to do with the question of whether or not an heir may be sued before acceptance subject to his right to stay or defeat the suit by claiming the delay for deliberation or by renouncing.

At all events, for reaching the conclusion to which the court arrived that an heir can be sued as the representative of the succession before he has accepted, there was no necessity of announcing the said proposition: for the fact that an heir is liable to be sued as representative of the succession is no reason for his not being liable to be sued personally.

Indeed, if he can be sued at all as representative of the succession, it is only for the reason that he may be sued personally. And in this Jorda Case the court, without realizing what it was doing, gave no other reason. This I say because for the sole reason of its said conclusion the court cited article 1014,

supra, which does not show that the heir may be sued as the representative of the succession, but does show that he may be sued personally, and article 874, which has no relevance. It reads:

"Art. 874. Finally, succession signifies also that right by which the heir can take possession of the estate of the deceased, such as it may be."

When article 940, supra, says that the succession is acquired by the heir immediately after the death of the deceased, and article 941, supra, says that he so acquires by operation of law alone before he has expressed any will to accept, and article 942, supra, says that, he being thus considered seized of the succession, the right of possession continues in him without interruption, and article 944, supra, says that he is considered to have succeeded to the deceased from the instant of the latter's death, and article 945, supra, says that he may bring all actions even possessory ones, and article 1014, supra, says that he being thus seized (i. e., having the seizin) of the succession is considered to be the heir until he renounces. The meaning is not that all this happens to the heir in a representative capacity, as the legal representative of the abstraction called succession, constituted of the rights and obligations of the decedent, but the meaning is that all this happens to him personally; that he thus succeeds to the decedent and is vested with the seizin in his proper person and for his own self.

Very evidently, then, if because the heir is thus considered to be heir he may be sued as the representative of the succession, a fortiori, for the same reason, may he be sued personally.

How illogical and unreasonable it would be on the part of our law to consider the heir to be the heir before he has accepted, and not to allow all parties in interest so in like manner to consider him, and bring suit against him accordingly.

The whole trouble with the said proposition announced (more or less obiter) in this Jorda Case, and with the conclusion arrived at by the majority opinion in this present case, results from the distinction not being observed between holding the heir unconditionally liable for the debts of the decedent before acceptance and allowing him to be sued subject to his right to stay the suit or defeat it altogether by claiming the delay for deliberating or renouncing.

So long as the debts of the decedent have not been paid, his succession presents two aspects—one in which it is vested sub modo (subject to renunciation) in the heir; and one in which it is an ideal being, an abstraction, constituted of the rights and obligations of the decedent, something after the fashion of a corporation. Tulane University v. Board of Assessors, 115 La. 1029, 40 South. 445. If the heir eventually accepts, the acceptance "goes back to the opening of the succession" (C. C. 987), and the heir "is considered as having succeeded to the deceased from the moment of his death" (C. C. 946). If he eventually renounces, the renunciation relates back in the same way, and "he is considered as never having received it." See same article, C. C. 946. Meantime the succession is vested sub modo in the heir for all purposes. Soye v. Price, 30 La. Ann. 93. If at the desire of the heirs or of the creditors the succession is to be dealt with as a legal abstraction or ideal being, then the law provides who shall be the agents or legal representatives of the succession to have charge of it. The law so provides both when the succession is vacant, i. e., when the heirs are unknown or renounce (C. C. 1095 et seq.) and when the heir desires to accept with benefit of inventory (C. C. 1032 et seq.). This court held in Succession of Lamm, 40 La. Ann. 312, 4 South. 53, that the succession

may be administered by the heir who has accepted with benefit of inventory. In so holding the court went very far; for the Code, in article 1032 et seq., would seem to require that an administrator be appointed whenever the heir claims the delay for deliberating. Article 1041. However, by allowing the heir who has thus accepted to represent this ideal being or abstraction called succession, no complications can be brought about in actual practice; for he is then holding really for the creditors, and may well, therefore, serve as their legal representative in what concerns the succession. But to allow the heir who has not yet accepted the succession to represent it is to allow a person to do so who will, in the event of renunciation, turn out to have been a stranger to the succession at the time he was acting as its legal representative. It is to allow the succession to be dealt with both as an abstraction, i. e., something representing merely the rights and obligations of the decedent, and therefore not yet passed to the heir, but to be in charge of some agent of its own, and as something which the law has vested in the heir, of which he has the seizin, and may personally represent in possessory actions. The two situations are the antipodes of each other; they cannot coexist. It is not difficult to foresee how complications may arise from allowing an heir who has not yet accepted to act as the legal representative of this abstraction or ideal being called succession. If he is the representative of the succession, the succession may be sued contradictorily with him. Now, let us suppose that a judgment on a moneyed demand has been obtained against the succession so represented, and has been so obtained by default, the heir paying no attention to it, and that the heir has subsequently renounced; would such a judgment be res judicata as against the other creditors of the insolvent succession, and entitled as such to participate pro rata in the proceeds of the sale of the property of the succession? If a valid judgment, it would be so entitled; and it would be a valid judgment if obtained contradictorily with a representative of the succession, and, being res judicata, the door would be closed to any attempt on the part of the other creditors of the succession to show that the debt upon which it was rendered was not due.

Again, a suit cannot be brought on a moneyed demand against a succession without the claim having first been presented to the legal representative of the succession for acceptance or rejection. Now, if an heir, acting as heir, represented the succession in such a matter would he not necessarily be doing so in his quality of heir, and not as a mere conservatory measure, and would he not, therefore, be taking the quality of heir, and as a consequence tacitly accepting the succession?

My conclusion is that, until the heir has accepted, with or without the benefit of inventory, he cannot act as the legal representative of the succession except for purely conservatory acts. C. C. 997. What acts are or are not purely conservatory I need not go into. Suffice it that—

"The power to represent a principal in the defense of actions is not one of administration." Hennen, Dig. p. 833, No. 9.

The heir is considered the heir because "the succession is acquired by him immediately after the death of the deceased" (le mort saisit le vif), "by operation of law"; he is "considered seized of the succession from the moment it is opened," i. e., from the moment of the death of the decedent; "the right of possession which the deceased had continues in the person of the heir, as if there had been no interruption;" "this right authorizes the heir to institute all the actions, even possessory ones, which the deceased had a right to institute, and to prose-

cute those already commenced; for the heir in everything represents the deceased and is of full right in his place as well for his rights as his obligations."

It is because of these legal provisions that the heir is "considered to be the heir"; but the purport of these provisions is that the heir has stepped into the shoes of the decedent, "continued his person," and that as a consequence there is no succession (i. e., no ideal being or abstraction) for him to represent. He simply represents himself. He has become vested with the property, and subject to all the obligations. The existence of a succession (in the sense of an ideal being, or abstraction, constituting the rights and obligations of the decedent) presupposes that the heir has not thus stepped into the shoes of the decedent, "continued his person," etc. By being considered to be the heir is here meant considered to have stepped into the shoes of the decedent and continued his person. This has nothing whatever to do with representing the succession of the decedent, the very existence of which succession presupposes, I repeat, that the heir has not stepped into the shoes of the decedent.

My understanding is that this ideal being or abstraction called succession is a pure fiction, coexisting with the investiture of the heir, in no way conflicting with it; that by accepting with benefit of inventory the heir ipso facto constitutes himself the legal representative of this abstraction, subject to the right of the creditors to require that an administrator with bond be appointed or that the heir himself give bond.

My understanding of the legal situation is, further, that the heir in undertaking to act as the representative of the succession in his quality of heir before acceptance cannot go beyond mere conservatory acts; that, if he does, he ipso facto accepts the succession tacitly, and becomes unconditionally liable as heir. And my understanding is, further, that to represent the succession in a judicial proceeding, except temporarily as a mere conservatory measure until a regular representative may be appointed by the court, would necessarily constitute an acceptance, no matter how much the heir might protest to the contrary. The situation would be one where actions spoke louder than words. It not being possible to eat your cake and have it, too.

Recurring to the view taken by the majority opinion that the heir is not liable to be sued personally because by operation of article 946, supra, his heirship is in suspense until he has accepted, I will add to what I have already said that the position of this article in the Code, following article 940 et seq., supra, clearly indicates that what is meant by being "in suspense" is merely that the heir is not unconditionally bound, not that he does not continue the person of the decedent, stand in his shoes, become vested with the property, etc., and therefore liable to be sued. To give this article any other interpretation would place it in flat contradiction with article 940 et seq., supra, immediately preceding it.

If by being "in suspense" was meant a complete abeyance of the heirship, the situation would be that as long as the suspense lasted there would be no heir—a consequence which would be as fatal to the proposition of the heir being qualified to represent the succession as to the proposition of his being liable to be sued. The majority opinion is therefore inconsistent with itself when it holds that the suspension of the heirship prevents the heir from being sued for a debt of the decedent, and yet does not prevent him from representing the succession.

The majority opinion reads article 1000, supra, of the Code as having reference to a suit merely to compel the heir to accept or renounce. The article says: When an

heir "is cited before a court of justice as heir for a debt of the deceased" and "suffers judgment to go against him in that capacity," etc. If by this is not meant that in the suit itself brought by authority of this article (before the heir has accepted) for a debt of the decedent judgment may be rendered for the debt, I do not understand the English language, or I do not understand the meaning of words.

The majority opinion would attribute to said article no wider scope than to articles 979 and 980 of the Code of Practice, and the articles of the Civil Code corresponding with them. These articles read:

"Art. 979. Where the presumptive heir of a person deceased has not prayed for time to deliberate, every creditor or legatee of the deceased may, ten days after the opening of the succession, cite such heir to appear before the judge of probate, and call on him to declare whether he accepts the succession or refuses it.

"Art. 980. If the heir thus cited declares that he accepts, or if he be silent or make default, he shall be considered as having accepted the succession purely and unconditionally, and may be sued as if he had done so."

The suit which the creditors are authorized by these articles to bring is a suit to compel declaration on the part of the heirs to accept or renounce. It is not a suit to compel them to pay the debt. For bringing the latter kind of suit the creditors stand in no need of special authorization; no more so than any other creditor against his debtor. This right to bring suit to compel a prompt declaration of acceptance or rejection is a special right which would not exist without having been specially conferred. Its utility is in clearing the atmosphere for the creditor, in order that he may be advised without unnecessary delay how matters stand. He may not want to sue the heir personally, or to have the property of the succession commingled with the patrimony of the heir. He may want an administrator to be appoint-

ed with bond. And this suit to compel prompt acceptance or rejection is merely an additional means afforded him for the protection of his claims. To turn this provision against him for depriving him of the right to sue the heir which he would otherwise have would be to turn against him a provision devised in his favor. These articles do not say that the creditor may not bring the suit which article 1000, supra, clearly indicates he may bring. What they say is that by acceptance or by default in the kind of suit they authorize the heir becomes unconditionally bound. This is not saying that the heir may not be sued subject to his right to renounce or claim the delay for deliberating.

Up to now I have dealt with the case only as affecting the heirs. I will now consider it as affecting the widow. It may be done briefly. The community of acquêts and gains "is a right of partnership or community of acquêts and gains." C. C. 2399. It consists not only of the profits, but also of the debts. C. C. 2403. While the husband administers this partnership as its head, the wife is partner and half owner. Succession of Popp, 146 La. 473, 83 South. 765. This ownership is, however, altogether contingent so long as the community exists. At the dissolution of the community by the death of the husband, this ownership becomes fixed, though subject to the payment of the debts of the community. The widow is allowed to renounce the community, and thus liberate herself from its debts. C. C. arts. 2410 and 2411. But she is presumed to have accepted, and thus is presumed to be liable for her half of the debts. And, acting on this presumption, the creditors of the community may sue her for her half of the community debts, and if she does not in defense to such a suit plead that she has not accepted, and claim the delay for deliberating whether to accept, or to accept with benefit of inventory, judg-

ment must go against her. C. C. art. 2417. That the surviving widow is thus presumed to have accepted, see authorities cited in original opinion. That her ownership of one-half of the community property thus becomes fixed results as a necessary deduction from the said articles of the Code. And see, also, in that connection Succession of Dumestre, 42 La. Ann. 412, 7 South. 624, and authorities there cited, where it is said:

"When the community of acquêts and gains was dissolved by the death of the wife, the respective interest of the surviving husband and of the deceased wife attached at the moment of its dissolution to the property of the community, subject to the payment of the community debts."

See authorities there cited to effect that at death of husband wife's ownership becomes thus fixed, subject always to payment of debts. For the purpose of the settlement of the debts the community continues to exist as a fictitious being, in the same way that the succession of the decedent exists as a fictitious being for the settlement of the debts of the succession; but no more here than in the case of the heir does this fiction, which is a mere fiction, interfere with the reality of things. It exists only potentially, to be made use of if necessary for the purposes of the settlement of the debts of the community—i. e., in the interest of the creditors. This fiction does not displace the fact of the survivor in community being vested with the ownership of one-half of the property, and of being thus vested cum onere—i. e., subject to liability for the debts. She takes her half of the property and her half of the debts together, with the privilege on her part of renouncing, and thus liberating herself.

The opinion in Titche v. Lee, 22 La. Ann. 435, cited in the majority opinion, being short, may be reproduced here in full:

"The plaintiff instituted this suit against the defendant as administratrix of the estate of her deceased husband, and also asked for a judgment against her personally, upon the allegation that she 'is partner in community, that the notes (in suit) are debts due by the community, which existed between the deceased and Mrs. Amanda M. Lee, at the time of their execution, and that therefore she is bound for one-half of petitioner's claim.'

"There was judgment for plaintiff upon one of the notes, for the full amount against the defendant in her representative capacity, and for the half thereof individually; and she has appealed.

"The succession of Lee was opened in 1863 by the appointment of the defendant as administratrix, and an inventory was regularly made. So far as we can perceive she has managed the estate as administratrix only, and has not, as widow, concealed or made way with any of the effects of the partnership or community of gains. C. C. 2387. But the plaintiff contends that she is personally liable, because, up to the time this action was instituted, she had not renounced the community. It would seem, however, that the surviving wife has the thirty days allowed to a beneficiary heir, to make a choice between renunciation and acceptance. After the expiration of this delay she may be forced, by suit, to make her decision, in the same manner as an heir, and then judgment may be rendered against her personally if she does not renounce. Thus she has, for thirty days, a right of deliberation, and her deliberations cannot be disturbed by the action to compel a choice. But after this delay has expired she still has a right of renunciation, for, in the action to compel, a judgment is to be rendered against her personally 'unless she renounces.' The phrase implies a continued power of renunciation. C. C. 2383; C. P. 980, 982; Succession of Richardson, 14 Ann. 1.

"The pleadings and the evidence do not justify the personal judgment appealed from, nor do we feel authorized in this form of action to render the judgment contemplated in article 2383, C. C.

"It is therefore ordered that the judgment, so far as it is a personal one against Amanda M. Lee, be avoided and reversed; that in all other respects the said judgment be affirmed; and that the plaintiff pay costs of appeal."

What the contention was in that case is stated by the court. Says the court:

"Plaintiff contends that she, 'the widow,' is personally liable, because up to the time this action was instituted she had not renounced."

The case was not presented on exception of no cause of action, invoking a deficiency of pleading, but was presented on the question of whether under the evidence and under articles 2413 and 2414 of our present Code (articles 2382 and 2383 of Code of 1825) the widow had lost her right to renounce, and therefore was unconditionally liable. The court recited what the evidence consisted of, and adverted to the said articles of the Code, and held that under this evidence and under these articles the widow had not lost her right to renounce, and that therefore personal judgment could not be rendered against her.

True, the court incidentally remarked that neither the heir nor the widow can be sued before the expiration of the delay for deliberation. But this was said only incidentally, and is only one of those observations which courts make sometimes without much thought as to what foundation there may be for them. I believe I have demonstrated hereinabove that there is no foundation for it in so far as the heir is concerned; and the foundation which the court assigns for the proposition as to the widow is that the proposition is true as to the heir.

I do not question at all that when sued before acceptance the widow may, like the heir, defeat or delay the suit by renouncing or claiming the time for deliberating. But, as in the case of the heir, this does not mean that she may not be sued, subject to this right on her part. Of course, the creditor could rebut this defense by showing that she had accepted, either expressly or tacitly by having done acts importing acceptance. Her mere denial of acceptance would overcome the presumption of acceptance: for this denial would be one of those negatives not susceptible of proof, and therefore not required to be proved.

The exception of no cause of action based upon the absence from the petition of an allegation of acceptance amounts to a contention that a thing which the law presumes to exist must be alleged to exist; in other words, that what the law itself establishes as a legal fact must be alleged as a fact. So that, if instead of assuming that the court would take judicial knowledge of this presumption the plaintiff in the present case had alleged it, the petition would have been good. To my mind, such a contention is not only not well founded, but, with all due deference, is hardly worthy of being dealt with seriously. The allegation would have had to be something like the following, to wit:

"Petitioner further alleges that the law presumes the defendant widow to have accepted the community, and therefore petitioner alleges that she is so presumed to have accepted and alleges accordingly."

The object of pleading is to advise the adversary of something which would not otherwise be known, so that the adversary may be in a position to defend. In what way an allegation such as the above would advise the widow of something of which she stood in need to be informed for making her defense I fail entirely to see.