364 So.2d 198 (1978)
DUNAWAY REALTY COMPANY, INC., Appellant,
v.
Agnes Scott PULLIAM, Appellee.
No. 12229.
Court of Appeal of Louisiana, First Circuit.
October 9, 1978.
*199 Stacey A. Moak of Cicero & Moak, Baton Rouge, counsel for plaintiff-appellant.
Weldon J. Hill, II, Baton Rouge, counsel for defendant-appellee Agnes Scott Pulliam.
Joel B. Dickinson, Baton Rouge, counsel for defendants-appellees Philip N. Pecquet and West Baton Rouge Estates, Inc.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
BLANCHE, Judge.
This action arises out of a real estate brokerage fee contract executed by plaintiff and Ivey M. Pulliam, defendant's deceased husband, on September 4, 1973. The agreement allegedly made plaintiff the exclusive agent to sell 100 acres in West Baton Rouge Parish for a period of two years ending September 4, 1975. Plaintiff averred that under the contract it was entitled to a fee of ten percent for any sale of the property which was the result of its efforts during the term of the contract if the property were sold during the pendency of the agreement, or within 120 days of its termination. The original petition also alleged that the property was offered to Phillip N. Pecquet and, on December 31, 1975, was purchased for $75,000 by West Baton Rouge Estates, Inc. (WBRE), a Louisiana corporation of which Pecquet was alleged to be a shareholder.
The defendant filed the peremptory exceptions of no right and no cause of action alleging that defendant, Agnes Scott Pulliam, was not a party to the contract and further that the plaintiff had failed to allege that the ultimate purchaser was ever offered the opportunity to purchase the property during the primary term of the listing agreement. The trial judge sustained the exceptions but allowed plaintiff time in which to amend its pleadings.
Plaintiff amended its petition by joining WBRE, the ultimate purchaser, and Pecquet as defendants. These defendants were subsequently dismissed and are not before this Court. Plaintiff also claimed that Pecquet *200 and Agnes Scott Pulliam are shareholders in WBRE, that Pecquet advised Mrs. Pulliam not to pay the commission, and that the refusal to pay had served to enrich both defendant and Pecquet.
On the subsequent hearing on the defendant's exceptions of no right and no cause of action, the trial judge dismissed plaintiff's petition and plaintiff appealed.
Plaintiff is correct in asserting that there is no such exception as an exception of "no cause or no right of action." See Bamber Contractors, Inc. v. Henderson Brothers, Inc., 345 So.2d 1212 (La.App. 1st Cir. 1977). The peremptory exceptions of no right of action and no cause of action are directed at separate and distinct issues. The exception of no right of action is designed to question the right or interest of the plaintiff in instituting the suit and raises the issue of whether a remedy afforded by law can be invoked by a particular plaintiff. The peremptory exception of no cause of action challenges whether the plaintiff's petition sets out a grievance for which the law affords a remedy. LSA-C.C.P. art. 927(4); Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La.1975). It is firmly established that the well-pleaded facts of the petition are accepted as true for the purpose of adjudicating the exception of no cause of action. No evidence is admissible to defeat or support the exception and all doubts are to be resolved in favor of a cause of action and giving the plaintiff his day in court. Bamber Contractors, Inc. v. Henderson Brothers, Inc., supra.
We do not reach defendant's exception of no right of action since we find the plaintiff's petition fails to state a cause of action against Mrs. Pulliam.
While it is well settled that an agreement listing real estate for sale with a real estate broker may be oral or written (Samuels v. Firestone Tire & Rubber Company, 342 So.2d 661 [La.1977]), it is equally well settled that in order for a real estate broker to receive a commission for the sale of property, he must prove an agreement on the part of the person against whom a commission is sought to pay the same. Bender v. International Paint Company, 237 La. 569, 111 So.2d 775 (1959); Teague v. Ashy, 278 So.2d 516 (La.App. 3rd Cir. 1973). We note that the petition before us does not allege Mrs. Pulliam to have been a party to any real estate brokerage contract.
Plaintiff alleged that the defendant is the widow of Ivey M. Pulliam, the party who allegedly signed the brokerage contract. The plaintiff, however, failed to allege that the defendant had unconditionally accepted the community and the estate of her husband, Ivey Pulliam. The Supreme Court held in Schreiber v. Beer's Widow and Heirs, 150 La. 676, 91 So. 149 (1921):
"Articles 940, 941, 942, and 1014 of the Civil Code, declaring, substantially, that an heir, being invested with seizin or the right of possession of the estate by the mere operation of law immediately at the death of the ancestor, is considered the heir so long as he has not renounced the succession, must be read in connection with article 946, declaring that, although the succession is acquired by the heir at the moment of the death of his ancestor, the heir's right, nevertheless, remains in suspense until he decides whether he will accept or renounce the succession. In other words, so long as the heir has not renounced the succession, he is considered the heir for the purpose of being cited and of standing in judgment in a suit against the succession, as such, if there is no administrator or other such representative of the succession; and the heir who has neither accepted nor renounced the succession is likewise considered the heir for the purpose of being cited in an action to compel him to declare whether he will accept or renounce the succession, under article 1055 of the Civil Code and articles 977 and 979 of the Code of Practice. But an heir is not deemed liable personally for the debts of the succession, merely because he has not formally renounced, until his liability is fixed by the prescription established in article 1030 of the Civil Code." (91 So. at 155)
*201 Therefore, Mrs. Pulliam could not be cast in judgment for the debts of her husband's estate or the former community between them unless it was shown she had unconditionally accepted the estate of Ivey Pulliam and the former community between them. Since plaintiff has failed to aver such acceptance, its petition fails to state a cause of action against defendant for the obligation contracted by her husband.
We note that plaintiff was given ample time by the trial court to amend its petition so as to state a cause of action. Since plaintiff failed to do so, the trial court was correct in dismissing the petition. LSA-C.C.P. art. 934.
For the above and foregoing reasons, the judgment of the trial court is affirmed, plaintiff-appellant to pay all costs.
AFFIRMED.