323 So.2d 827 (1975)
Succession of Lucille McFarland, Deceased wife of Frank C. ANDERSON.
No. 7060.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1975.
Rehearing Denied January 13, 1976.
*828 Henican, James & Cleveland, New Orleans (C. Ellis Henican), New Orleans, for defendants in intervention-appellees.
Adams & Reese, New Orleans (William F. Ryan), New Orleans, for intervenor-appellant.
Before REDMANN, GULOTTA and SCHOTT, JJ.
SCHOTT, Judge.
These succession proceedings were commenced with the petition of decedent's surviving spouse, Frank C. Anderson, to probate her olographic will and qualify as testamentary executor. After a routine administration in which real estate in New Orleans and an automobile were sold Anderson, as executor and individually, was joined by his three children, all domiciliaries of other states, in a petition for authority to pay certain debts and for possession of decedent's property. The sworn list of assets which accompanied the petition for possession recited that the community formerly existing between decedent and Anderson had no assets and it listed a net separate estate of decedent of $418,211.69 after deduction of burial and administrative expenses. Also annexed to the petition for possession was an act of renunciation of the community of acquets and gains which formerly existed between decedent and Anderson by the three children, executed on December 31, 1971, by authentic act. In the petition Anderson and his children prayed for possession in accordance with decedent's will, i. e., the children for the naked ownership of all of decedent's separate property and their father for the usufruct. This usufruct was subject to termination upon either Anderson's death or his remarriage or a judicial seizure being made of the usufruct by any creditor. Pursuant thereto a judgment of possession was signed on March 1, 1972.
For the first time, on November 8, 1973, intervenor, Warren Donaldson, appeared with a petition for a notice of filing of *829 tableau of distribution, representing himself to be a creditor of the community. On December 19 intervenor filed a petition seeking to annul the judgment of possession, to require the return to the succession of all of the property derived therefrom by the surviving spouse and children of decedent, to reclassify the property shown to be separate property as community property and to have judgment against Anderson individually and as head and master of the community for some $142,390.00 plus interest, attorney's fees and court costs.
In his petition intervenor alleges that his judgment was a debt of the community being based on a judgment taken in the Civil District Court for the Parish of Orleans on November 18, 1968, against Anderson and others for a larger amount and thereafter compromised for the amount sued on herein. He recited that numerous transactions involving the sales and purchases of property were affected and are presumed to be transactions of the former community, and that the items comprising decedent's succession are presumed to be community property. He alleged that such property is therefore subject to his claim and cited LSA-C.C.P. Art. 3393 as his authority for the court to reopen the succession. Furthermore he relied on LSA-C.C. P. Arts. 3304, 3305, 3241-3249, and 3372 as authority for his argument that the executor had not complied with the law and was still vulnerable to the suit because of his failure to secure a discharge as executor. Finally, he alleged that he is entitled to judgment "annulling and rescinding... judgment of possession ..." Service was made on the four defendants under the Louisiana long arm statute LSA-R.S. 13:3201.
To this petition the surviving spouse and three children filed declinatory exceptions of improper venue and lack of personal jurisdiction as well as peremptory exceptions of no right or cause of action.
In his reasons for judgment, the trial court noted that memoranda filed in connection with the exceptions were not limited to the exceptions "but, by agreement of all parties, said arguments were primarily directed to the question of whether or not the Court should reopen the succession and/or recall and set aside the Judgment of Possession so as to give intervenor an opportunity to proceed with his case..." The court refused to recall and set aside the judgment of possession or to reconsider the proceedings in order to afford intervenor an opportunity to assert his claim, and the exceptions were deemed moot and unnecessary to decide. From the judgment intervenor has appealed.
From the foregoing it is clear that the present procedural posture of the case is unusual. Defendants filed declinatory exceptions of lack of personal jurisdiction over them and improper venue, but in the same pleading they filed a peremptory exception of no right or cause of action. The trial judge took no evidence in the case but was extensively briefed and heard argument on the issues which were properly addressed to the exception of no cause of action filed by defendants. He included in his judgment the following:
"IT IS ORDERED, ADJUDGED AND DECREED that the Court hereby and herein refuses to recall and set aside the Judgment of Possession read, rendered and signed in these proceedings on March 1, 1972, and/or to reconsider these succession proceedings in order to afford Warren Donaldson, intervenor, an opportunity to assert, against decedent's estate, and/or her executor and/or her surviving spouse, and/or her sole legal heirs, above named, the claim set forth in the petition of intervention filed by intervenor herein." (Emphasis supplied)
Even the wording of this judgment demonstrates that the trial judge was maintaining an exception of no cause of action when he refused to provide intervenor with an "opportunity to assert ... the claim set forth in the petition," and *830 consequently we have considered the judgment appealed from primarily as one which maintained the exception of no cause of action. It is also noted that the allegations of the petition in intervention which intervenor relies upon to state a cause of action to annul the judgment of possession are extremely vague, but the trial judge in hearing the argument and considering the memoranda had much more before him than these bare allegations, nevertheless concluding in effect that intervenor stated no cause of action to annul the judgment of possession.
As to the declinatory exception defendants filed these simultaneously with peremptory exceptions of no right and no cause of action. They voluntarily participated in the procedure which led to a dismissal of intervenor's claim on the basis of their exception of no cause of action. They thereby made an appearance and waived their objections to the jurisdiction and venue. LSA-C.C.P. Art. 925. For this reason their declinatory exceptions will be dismissed.
Much of the argument in this Court and in the trial court centered around the applicability of LSA-C.C.P. Art. 3393 which provides for the reopening of a succession. Part A of the article applies to the situation where the succession representative has been discharged and Part B to the situation where there has been a tacit or express acceptance of the succession by the heirs or a rendition of a judgment of possession. In either case, the article provides that "if other property is discovered, or for any other proper cause, upon the petition of any interested person, the court... may order that the succession be opened or reopened" and provides that the court may reappoint the original succession representative or another in order to administer the reopened succession. The parties also devoted much attention to a number of articles in the Code of Civil Procedure governing the conduct of an executor and his relationship to creditors which intervenor contends were ignored or violated by the executor, and a number of other articles which provide creditors with safeguards in asserting their claims and which the executor contends the intervenor ignored or failed to utilize. However, in view of the contention of intervenor that the judgment of possession was obtained through ill practices it is unnecessary to consider the other arguments raised by intervenor.
LSA-C.C.P. Art. 2004 on which intervenor relies provides for the annulment of a judgment. If intervenor succeeds with his action to annul the judgment of possession, that judgment will be treated as though it was never signed in the first instance. The parties, namely the executor and legatees will be in the same position they were in before the judgment of possession was obtained. Thereafter, any discussion relative to reopening the succession pursuant to Art. 3393 would be unnecessary because the succession would be restored to the same status it was in before the null and void judgment was signed in the first instance.
Similarly an annulment of that judgment of possession would put the creditors in the same position they were in before the rendition of the void judgment. Intervenor would have available to him all the remedies affored by the Code of Civil Procedure for the protection of creditors.
Thus, the focal point of our inquiry is whether intervenor has stated a cause of action to nullify the judgment of possession. His petition itself is not sufficient but when considered with the assertions in his memoranda and briefs it is clear that the grounds for objection to the petition may be removed by an amendment which would particularize the factual allegations supporting his charge of ill practice on the part of defendants in obtaining the judgment of possession. LSA-C.C.P. Art. 934.
Art. 2004 provides as follows:
"A final judgment obtained by fraud or ill practices may be annulled.

*831 "An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices."
Intervenor has specifically disassociated himself from any allegation of fraud on the part of the executor and the legatees, but he has contended that their activities constituted ill practices providing a basis for his action to annul the judgment. A petition to annul a judgment for ill practices where no fraud is alleged or proved does provide a cause of action to set aside an ex parte petition for possession. Succession of Menendez, 238 La. 488, 115 So.2d 829; Succession of Trouard, 281 So.2d 863, (La.App.3rd Cir. 1973); Succession of Gilmore, 157 La. 130, 102 So. 94. Intervenor has alleged that he has been in contact with the executor in his individual capacity and has produced correspondence with the executor relative to his claim between January and April, 1972, which led intervenor to believe he would be paid by Anderson without the necessity of his asserting his rights in the succession. He claims that much of the property claimed to be separate property of the decedent was community property and became designated as separate property only by virtue of self serving ex parte declarations of his debtor and the children of his debtor. He complains that the ex parte judgment of possession enabled the children to syphon off community property and remove it from the State of Louisiana by virtue of their unsupported declarations that the properties were separate and paraphernal. Alluding to the presumptions which run in his favor to the effect that these properties were community, intervenor claims he was deprived of an opportunity to prove the community nature of the property by this scheme between the executor and his children.
An overriding consideration in this case is that the result here was accomplished by the legatees only because their father was the executor. Art. 3371 would have required a contradictory hearing against him except that he joined with them in the petition invoking the provisions of Art. 3381. But as executor he owed a duty not only to the legatees but to creditors as well. Under Art. 3191 he is a fiduciary who should avoid a conflict of interest between a creditor and himself as an individual. Surely his alleged participation in this scheme smacks of the ill practices set forth in Art. 2004.
Comment (b) to Art. 2004 observes the following:
"Although the courts do not sanction negligence or laches, they have not hesitated `to afford relief against judgments irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of the legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable.'" (Citations omitted)
If intervenor's allegations and contentions are true it does seem unconscionable to deny him the relief which he seeks. His alternative would be to go to Connecticut in the case of one of the legatees and to Texas in the case of the others to litigate questions of Louisiana community property law which may very well be strange to those courts. These legatees received considerable property by virtue of a judgment of the Louisiana court and any attempt to undo the results of that judgment should be tried in the same court. Intervenor seeks only his day in court and has been told that he is not entitled to one despite the fact that he has alleged ill practices and has been permitted to elaborate on the vague allegations of his petition in a trial consisting of his filing of memoranda and presenting oral argument to the court. We take no position on the merits of intervenor's claim and hold only that he should be permitted to amend his petition to incorporate all of the factual allegations *832 he has included in his arguments and memoranda so as to state a cause of action to annul the judgment of possession. Defendants may then answer and raise any affirmative defenses they may deem applicable.
The second paragraph of Art. 2004 requires that the suit be filed within one year after discovery of the ill practice and we note that the petition does not allege when this discovery was made. It is incumbent upon intervenor to allege that his action was brought within one year of the discovery of ill practices, otherwise his right is lost by peremption under this article.
Accordingly, the judgment appealed from is reversed and set aside. The declinatory exceptions of defendants are dismissed. The peremptory exception of no right of action is overruled. The exception of no cause of action is sustained but the case is remanded to the district court to permit intervenor to amend his petition and for further proceedings consistent with the view expressed herein.
Reversed and remanded.
GULOTTA, J., concurs with written reasons.
GULOTTA, Judge (concurring).
I agree with the result which orders a remand; however, I disagree with the conclusion reached by the majority that "any discussion relative to reopening the succession pursuant to Art. 3393 would be unnecessary", in view of the allegation of nullity based on ill practice. The effect of the majority's conclusion is to read LSA-C.C. P. art. 3393 out of the Code. In my opinion, if we conclude "proper cause" has not been alleged to reopen the succession, intervenor has no right to assert his claim in the succession proceeding for nullity under LSA-C.C.P. art. 2004.
If the succession remains open, intervenor can assert his claim in the succession proceeding. On the other hand, if the succession has been closed, intervenor has the burden, as required in LSA-C.C.P. art. 3393, of alleging proper cause for the reopening of the succession. In the instant case, the heirs were placed in possession. However, the final account and tableau of distribution were waived and the executor was never discharged.
In Succession of Quaglino, 223 La. 171, 65 So.2d 127 (1953), the Louisiana Supreme Court stated:
"* * * A judgment homologating a final account and discharging the administrator operates as a closing of the succession. * * *"
However, the Supreme Court case of Key v. Salley, 218 La. 922, 51 So.2d 390 (1951) stated:
"It is well settled that a succession terminates when heirs are placed in possession of the estate. The succession ceases to exist after the heirs are placed in possession and the property becomes the common property of the heirs as co-owners. * * *"
At first glance it appears that Quaglino indicates a discharge of the administrator operates as a closing of the succession, and Key, it is resolved by art. 644 of 1970 possession closes the succession.
If a conflict exists between Quaglino and Key, it is resolved by art. 644 of 1970 which is incorporated in LSA-C.C.P. art. 3393.
Art. 3393. Reopening of succession
"A. After a succession representative has been discharged, if other property of the succession is discovered or for any other proper cause, upon the petition of any interested person, the court, without notice or upon such notice as it may direct, may order that the succession be reopened. * * *" (emphasis supplied)
"B. After tacit or express acceptance by the heirs or rendition of a Judgment *833 of possession by a court of competent jurisdiction, if other property is discovered, or for any other proper cause, upon the petition of any interested person, the court, without notice or upon such notice as it may direct, may order that the succession be opened or reopened, as the case may be, regardless of whether or not, theretofore, any succession proceedings had been filed in court. * * *" (emphasis supplied)
The pertinent provisions of LSA-C.C.P. art. 3393 lead me to conclude that either the discharge of an executor or the rendition of a judgment of possession, as in the instant case, operates as a closing of the succession.
Accordingly, in order to reopen the succession, it is intervenor's initial burden to allege sufficient facts to constitute grounds to reopen the succession.
In the recent case of Succession of Yancovich, 289 So.2d 855 (La.App., 4th Cir. 1974), this-court held the alleged discovery of facts showing that the succession inventory incorrectly designated succession assets as community property, when those assets were separate property or community assets of a prior marriage, did not constitute "proper cause" sufficient to justify a reopening of the succession. In that opinion we pointed out that a finding of proper cause for reopening successions is within the discretion of the trial court and may be overturned only for an abuse.
In Yancovich, the court went on to say:
"In the instant case, the alleged discovery, made approximately 7 years after the closing of the succession, of facts showing that the succession inventory may have incorrectly allocated property to an allegedly nonexistent community of acquets and gains is not sufficient "other proper cause" under Article 3393 to reopen the succession. We can see no need to reopen this succession, nor does it appear to us that appellants would obtain any advantage by a reopening."
The factual backgrounds in Yancovich and the instant case are similar, but distinguishable. In Yancovich, the administratrix had filed a final account and a tableau of distribution which was approved and homologated. The funds were ordered distributed and a judgment was rendered discharging the administratrix and cancelling the bond. In the instant case, the final account and tableau of distribution were waived and the executor was not discharged. Presumably, in Yancovich, publication of the final account and tableau of distribution would have afforded any creditor notice of the succession proceeding and the opportunity to assert his claim. Because of the waiver of the final account and tableau in the instant case, no notice was afforded to the creditor and, presumably, he was denied the opportunity to assert a claim or to protect his rights as provided by LSA-C.C.P. Arts. 3305, 3034, 3007, 3008, 3241 and 3242. The protective devices afforded to a creditor by the Code of Civil Procedure presume he has notice or knowledge of the opening of the succession. If there has been no publication of an account in a succession under administration, the creditor is deprived of notice, as in the instant case.
Under the circumstances, I am of the opinion that intervenor's allegations constitute "proper cause" to reopen the succession. Having so concluded, I would remand this matter for the purpose of consideration of the question of nullity of the judgment based on alleged ill practice.