448 So.2d 95 (1984)
UNITED CREDIT PLAN OF GRETNA
v.
Richard PULLEN and Bobalin Pullen.
No. 83-C-2011.
Supreme Court of Louisiana.
February 27, 1984.
*96 Irl R. Silverstein, Gretna, for applicant.
John F. Rowley, Dist. Atty., Marcel J. Gueniot, Asst. Dist. Atty., William H. Egan, Chalmette, Richard K. Dimitry, New Orleans, for respondents.
CALOGERO, Justice.
This case involves a contest over the proceeds of a foreclosure sale, between a conventional mortgagee (relative to a wife's separate property), and a judgment creditor with an earlier inscribed judicial mortgage (against the husband).
On August 11, 1978, a judicial mortgage bearing against Richard Pullen took effect upon recordation in St. Bernard Parish of a $1445.00 judgment in favor of Southern Baptist Hospital. The judgment came out of a lawsuit to recover on a medical bill incurred when Richard Pullen's wife, Bobalin Pullen, gave birth to a child at Southern Baptist Hospital in New Orleans.
*97 On April 6, 1979, United Credit Plan of Gretna loaned Bobalin Pullen and Richard Pullen $31,900.00. The loan was secured by a conventional mortgage on property located at 2204 Farmsite Road, Violet, Louisiana in St. Bernard Parish. That was the separate property of Bobalin Pullen which she had acquired by judgment of possession in the succession of one Barbara Duhe. Following default in the payments due under the mortgage, United Credit foreclosed on December 17, 1979. On March 5, 1980, United Credit bought the property in at the sheriff's sale for $28,334.00, the amount due on its mortgage.
Southern Baptist Hospital intervened to have the sheriff's sale set aside because the sale did not bring sufficient monies to pay off the outstanding mortgages,[1] or alternatively, to be paid by United Credit the $1,445.00 owed on the hospital's judgment against Richard Pullen. The district court refused to set aside the sale of the property, but did order United Credit to pay Southern Baptist Hospital the amount outstanding on their judgment. United Credit appealed.
The Court of Appeal found that the property in question was the separate property of Bobalin Pullen, which at the time the mortgage was confected (April 16, 1979) was not available to community creditors to satisfy a community obligation incurred by the wife. However, the Court of Appeal went on to find that, at the time of the judicial sale (March 5, 1980), the law regarding the availability of a wife's separate property to satisfy a community debt incurred by her, had changed. Under the law as it existed in March of 1980, and today, creditors are allowed to satisfy a community obligation not only from community property but also from the separate property of the spouse, including a wife, who has incurred the debt. Because "the obligation to pay the hospital clearly arose after Bobalin Pullen was admitted to Baptist for the delivery of the couple's child and received medical services there" [435 So.2d 1055 at 1057, n. 3 (La.App.1983)], the appellate court concluded "that Southern Baptist Hospital had a judicial mortgage against the Pullens[2] which on March 3, 1980, was superior to the mortgage of the seizing [conventional mortgage] creditor", [435 So.2d at 1057], a creditor who held a mortgage made by the wife on her separate property. (emphasis provided.)
According to United Credit the Court of Appeal was apparently applying in some sort of retrospective manner a 1980 change in the law which freed a wife's separate property for the involuntary satisfaction of community debts incurred by her. United Credit sought writs contending that the Court of Appeal erred in "giving retroactive application to La.C.C. art. 2345." This question of the retroactivity of La.C.C. art. 2345 may yet have to be resolved, and we might conjure up hypothetical cases in which retroactive application, or not, would be dispositive in a given case. However, that is not the case here. Rather, this case can be resolved simply on the matter of ranking of mortgages, and by affording appropriate respect to the public records doctrine.
By virtue of its outset inscription of the judgment against Richard Pullen, does Southern Baptist have a ranking lien in competition with United Credit's recorded conventional mortgage against the wife and her separate property? The answer is no.
A judicial mortgage is "that resulting from [a] judgment ..., in favor of the person obtaining [it]." La.C.C. art. 3321. La.C.C. art. 3328 provides that "(t)he judicial mortgage may be enforced against all the immovables which the debtor actually *98 owns and may subsequently acquire." (emphasis provided.) The only property affected by the judicial mortgage resulting from Southern Baptist's $1,445.00 judgment against Richard Pullen was property owned or to be acquired by that named judgment debtor, Richard Pullen.
A conventional mortgage is "a contract, by which a person binds the whole of his property, or a portion of it only, in favor of another, to secure the execution of some engagement, but without divesting himself of the possession." La.C.C. art. 3290. "Conventional mortgages can only be agreed to by those who have the power of alienating the property which they subject to them." La.C.C. art. 3300. In this case Bobalin Pullen and she alone was the party who mortgaged her separate property.[3]
Applying the foregoing legal principles, the 1978 judgment against the husband (and its recordation) resulted in a lien on what he owned and on what he might later own, but the creditor got no lien against property belonging to anyone other than that debtor. La.C.C. art. 3328. The judicial mortgage against the property of Richard Pullen did not attach to the separate property of his wife. Furthermore, before 1980 Mrs. Pullen's separate property was not exposed to the satisfaction of her husband's judgment debt, even if a community obligation and incurred by her, absent a community property partition and express acceptance of community debts. La.C.C. art. 2403 and 2410 (1870).[4]
Effective January 1, 1980, however the immediately preceding statement is no longer so. La.C.C. arts. 2403 and 2410 were repealed and La.C.C. art. 2345 was enacted, which provides that "[a] separate or community obligation may be satisfied during the community property regime from community property and from the separate property of the spouse who incurred the obligation." So, after 1980 Bobalin Pullen's separate property is exposed to the satisfaction of a community debt incurred by her.
With the change in the law, Southern Baptist Hospital may have secured a right which did not formerly exist: that is, to satisfy a community debt incurred by the wife from the wife's separate property. Had the judicial mortgage been recorded in both names, Richard and Bobalin Pullen, on August 11, 1978, and the change in the law were simply to have made formerly unavailable property of the judgment debtor available to creditors, Southern Baptist's claim to a portion of the proceeds of the sale might have more merit. However, in this case, Southern Baptist Hospital's recorded judgment was only against Richard Pullen. Bobalin Pullen's obligation on this community debt has not produced a judgment against her. Consequently no lien against her separate property has arisen out of it. At best we can speculate about her separate responsibility, since the unpaid bill to Southern Baptist was one for medical treatment she and her newborn daughter received.
*99 Southern Baptist might even argue (whether plausible or not) that a judicial mortgage attached to the wife's separate property when the new law took effect on January 1, 1980, and that the court should, based upon a January 1, 1980 change in the law, constructively add the name of Bobalin Pullen to Southern Baptist Hospital's existing recorded inscription against Richard Pullen. This would still avail them naught for they are in competition with the holder of a prior conventional mortgage which specifically bears against Bobalin Pullen and her separate property, and which predates the change in the law.
A conventional mortgagee cannot be made to look beyond the public record, and to have to speculate about existing liens or judicial mortgages. This is especially so in a case like the one under consideration where the right of the creditor to seize the wife's separate property did not even arise until after the conventional mortgage was recorded. Therefore, even assuming that the 1978 judicial mortgage against Richard Pullen should somehow effectively be recognized as a judicial mortgage against the wife's separate property, the earliest effective date should surely be no sooner than January 1, 1980, the date when the law was changed to afford Southern Baptist its newly acquired right. And at that time United Credit already had an existing conventional mortgage on the property, recorded on April 6, 1979.
The rank of a creditor's claim is established by the priority of its registry in the appropriate public record. La.C.C. art. 3329; La.R.S. 9:2721; Quality Finance Co. of Donaldsonville, Inc. v. Bourque, 315 So.2d 656 (La.1975); McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909). Accordingly, United Credit's mortgage ranked any claim of Southern Baptist Hospital and the proceeds of the foreclosure sale are not subject to Southern Baptist's claim for the satisfaction of its judgment. The judgments of the lower courts to the contrary are therefore in error.

Decree
The judgments of the district court and the Court of Appeal, insofar as they ordered United Credit of Gretna to pay Southern Baptist Hospital $1445.00, the amount of the hospital's judicial mortgage against Richard Pullen, are reversed. Southern Baptist's intervention is dismissed. United Credit's writ of mandamus is made peremptory and the inscription in MOB 164 Folio 86, Clerk's Office for the Parish of St. Bernard, of the judgment favorable to Southern Baptist Hospital against Richard Pullen is cancelled only insofar as it may be asserted to apply to the property described as Lot 13, Section 12 Poydras Farm Site and the improvements thereon bearing the Municipal Number 2204 Farmsite Road in Violet, Louisiana, St. Bernard Parish.
JUDGMENT REVERSED; INTERVENTION DISMISSED; WRIT MADE PEREMPTORY.
BLANCHE, J., concurs in the result.
MARCUS, J., concurs and assigns reasons.
MARCUS, Justice (concurring).
Southern Baptist is a creditor on a community debt incurred by the wife. Southern Baptist obtained a judgment on this debt against the husband and recorded it. Under the law in effect at that time, the debt could not be satisfied out of the wife's separate property. However, under the law, effective January 1, 1980, this debt could be satisfied from community property and from separate property of the wife, the spouse who incurred the debt. La.Civ. Code art. 2345. This is so even though the judgment was taken only against the husband because the debtor was the community, not the husband.
However, in this case, Southern Baptist was outranked on the wife's separate house by United Credit, mortgagee on the house, although Southern Baptist's judicial mortgage predated United Credit's mortgage. At the time United Credit granted the wife the mortgage, Southern Baptist *100 could not have satisfied its mortgage from the wife's separate property. Thus, United Credit's mortgage was superior to Southern Baptist's mortgage as to the wife's separate house. The law that now permits a creditor of the community to satisfy its debt out of a spouse's separate property cannot be applied retroactively to deprive United Credit of its vested right to outrank Southern Baptist on the house. Hence, I respectfully concur in the result reached by the majority.
NOTES
[1] The mortgage certificate which the sheriff had secured in connection with the sale, listed two outstanding mortgages against Richard Pullen, one favoring Allstate Insurance and one favoring Southern Baptist Hospital. It was later determined that Allstate's judgment against Richard Pullen had been satisfied.
[2] It is worth noting, however, that the judgment was not taken against Bobalin Pullen but against Richard Pullen alone and the judicial mortgage inscription bore against Richard Pullen alone.
[3] It is true, of course, that United Credit had Richard Pullen as well as Bobalin Pullen sign the notarial act as mortgagors of the Farmsite Road property. (This presumably is what caused the sheriff's office to run mortgage certificates on both Richard and Bobalin Pullen.) That protective device on the part of the lender (i.e., having Richard join Bobalin in the notarial act by which Bobalin mortgaged her separate property) was mere surplusage. It had no legal effect either to make Richard a mortgagor of the property he did not own, or to give him any interest in it.
[4] La.C.C. art. 2403 before its repeal in 1980 provided:

In the same manner, the debts contracted during the marriage enter into the partnership or community of gains, and must be acquitted out of the common fund, whilst the debts of both husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects.
La.C.C. art. 2410 before its repeal in 1980 provided:
Both the wife and her heirs or assigns have the privilege of being able to exonerate themselves from the debts contracted during the marriage, by renouncing the partnership or community of gains.