541 So.2d 243 (1989)
SUCCESSION OF Marian Louise QUARTARARO.
No. 88-CA-1689.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1989.
Paul S. Fiasconaro, Fiasconaro & Fiasconaro, New Orleans, for appellant.
Michael J. Moran, PLC, Metairie, for appellee.
Before SCHOTT, C.J., and KLEES and WILLIAMS, JJ.
WILLIAMS, Judge.
In this appeal, both the appellant and appellee are creditors of Wayne P. Cusimano, an heir to the succession of Marian Louise Quartararo. Appellee, Fred C. Ebel & Company, Inc. (Ebel), was authorized by the trial court to accept the succession on Cusimano's behalf after filing an oblique action pursuant to LSA-C.C. arts. 1071 and *244 2044.[1] Now, appellant, A. Benandi & Sons, Inc. (Benandi), claims that the judgment on the Rule to Rank creditors was premature because the trial court's authorization to Ebel to accept the succession was both procedurally deficient and premature. Appellant also claims that in regard to the Rule to Rank Creditors, the trial court erred in ruling that Cusimano's interests in the succession be distributed in the order of the recordation of Cusimano's various judgment creditors and lienholders, instead of being distributed in order of the seizures of Cusimano's interests in the succession. For the reasons stated below, we find no procedural deficiencies in regard to Ebel's attempts to compel Cusimano to accept or reject the succession and we find the Rule to Rank was not premature, as LSA-C.C.P. art. 3136 authorizes the filing of a sworn descriptive list in lieu of an inventory. However, we find that the trial court's judgment on the Rule to Rank creditors fails to reflect that the judicial mortgage is enforceable only against immovables, so that it would have no effect upon the movables inherited by Cusimano. Accordingly, the ruling of the trial court is amended in part and the case is remanded to the trial court for a new ruling on the Rule to Rank consistent with the views expressed in this opinion.
FACTS AND PROCEDURAL HISTORY
Marian Louise Quartararo died intestate on February 8, 1983, leaving her niece and nephew, Darlene C. May and Wayne P. Cusimano, as her heirs. Wayne P. Cusimano declared bankruptcy on October 16, 1984 and was discharged of all personal debts, except Louisiana taxes, on June 29, 1985.[2] However, as a result of his debts, a number of Cusimano's creditors intervened in his aunt's succession, including: Ebel; Benandi; Pelican Tomato Co., Inc.; Joseph A. Matassa; Baldo Mannino; Sinclair & Associates, Inc.; and Bubba's Produce Co., Inc. Moreover, two seizures were made upon Cusimano's interest in the succession, the first by Benandi on February 16, 1984 for the $39,420.50 owed that entity and the second by Ebel on April 2, 1984 for Ebel's three consent judgments against Cusimano in the amounts of $200,087.76; $303,152.76 and $80,976.00. Ebel's claim against Cusimano dated back to January 4, 1982 when it obtained three consent judgments against Cusimano, which were recorded in the mortgage records on January 7, 1982. Benandi's judgment against Cusimano was not recorded in the mortgage records until December 8, 1983. At the present, all Cusimano's creditors, but Ebel and Benandi, have ceased pressing their claims against the succession.
The history of the succession is as follows: May received her letters as administratrix on November 9, 1983. She found the estate cash poor and land rich; hence, she conserved rents flowing from some of the immovables and she sold other immovables. May submitted a final tableau of distribution, which was homologated on November 21, 1985. Thereafter, she filed her final accounting on December 4, 1985, which was homologated on March 12, 1986. May then petitioned the court to partition the succession assets and, after a trial on the merits, the judgment ordering partition in kind was signed January 5, 1987. This judgment awarded May certain assets and also awarded Cusimano, subject to the claims of his creditors, certain bonds ($225.00), funds in a bank account ($92,792.17), an undivided one-half interest in two parcels of real estate ($13,000.00 and $18,000.00), and miscellaneous household effects ($750.00). Prior to the signing of this judgment, May had petitioned the court to be sent into possession, as she had accepted the succession unconditionally. She also requested that she be discharged from her position as administratrix of the succession, as the administration of the estate was completed. Consequently, the court signed May's judgment of possession on the same day that the succession was partitioned.
*245 Thereafter, on January 29, 1987, Ebel petitioned[3] the court as Cusimano's creditor, to accept the succession in Cusimano's stead and to be appointed administrator of the succession. Along with this petition, Ebel filed a Rule to Show Cause, seeking to compel Cusimano to appear and show why Ebel should not be authorized to accept his interest in the succession. The trial court declined to order this rule for the reason that Ebel's motion was "not a summary matter." Thereafter, pursuant to Cusimano's request, Cusimano was granted on March 6, 1987, an additional thirty (30) days in which to file responsive pleadings. However, as Cusimano filed no other pleadings, Ebel took a preliminary default on the matter on June 17, 1987 and a default judgment on July 24, 1987. Accordingly, on July 24, 1987 judgment was entered in favor of Ebel, authorizing that creditor to accept the succession of Marian Louise Quartararo on behalf of Cusimano and authorizing Ebel to be appointed administrator of the succession and have letters of administration issued to it. That same day Ebel filed its sworn descriptive list, which essentially listed the property awarded to Cusimano in the partition proceeding.
After Ebel filed a Rule to Rank on May 2, 1988, Benandi filed a Motion to Continue, claiming the rule was premature as Cusimano had not been compelled to accept the succession under LSA-C.C. art. 1055 and had not formally rejected the succession by notarial act. When the trial court denied the motion to continue, Benandi sought supervisory writ from this court which was denied on June 17, 1988. The hearing on the Rule to Rank was conducted that same day and was taken under advisement. Thereafter, the trial court issued its judgment on June 22, 1988, ordering the claims of the State of Louisiana, Department of Revenue be recognized as superior to all other claims [$18,381.56] and that the funds remaining be distributed in the order of recordation of Cusimano's various judgment creditors and lienholders, i.e. Ebel's judgments and then Benandi's. Finding this judgment grievous, Benandi filed a suspensive appeal on July 25, 1988.
ASSIGNMENT OF ERROR NO. 1
Benandi asserts that the trial court should not have heard the Rule to Rank because no demand had been made on Cusimano to accept or reject the succession as required by LSA-C.C. art. 1055[4], because Cusimano did not formally renounce the succession as required by LSA-C.C. art. 1017 and because the trial court accepted the sworn descriptive List of Assets and Judgment of Partition instead of requiring an inventory, LSA-C.C. art. 1072[5]. However, we find that all of Benandi's arguments lack merit because the requirements of LSA-C.C. art. 1055 were met, Cusimano's formal renunciation was not needed and the filing of the descriptive list in lieu of the inventory is expressly sanctioned by LSA-C.C.P. art. 3136.
Benandi's appeal raises the issue of whether Ebel's oblique action under LSA-C.C. arts. 1021, 1071 and 2044 (former art. 1990) was premature because Ebel failed to bring a separate action to compel Cusimano to declare whether he will accept or renounce the succession under LSA-C.C. art.
*246 1055.[6] We, however, find no procedural deficiencies in Ebel's action as the oblique action, in the form suggested by LSA-C. C.P. form 893, also constituted an action to compel the heir to decide as required by LSA-C.C. art. 1055. Thus, all the requirements of the law were fulfilled through the single action. Furthermore, due to Cusimano's inaction in the oblique action, no formal renunciation by him was needed. Cusimano's inaction resulted in his tacit acceptance of the succession. LSA-C.C. art. 1057; Succession of Menendez, 238 La. 488, 115 So.2d 829, 831 (1959), rehearing den.
Benandi also complains that the provisions of LSA-C.C. art. 1072 were not complied with, as the article directs that when the creditor is authorized to accept the succession in the heir's stead, "it is the duty of the judge to cause immediately to be made an inventory of the effects of the succession, to appoint an administrator to manage them, sell them, and pay the creditors, on his giving good and sufficient security for the fidelity of his administration, as in the case of acceptance with benefit of inventory." See LSA-C.C. art. 1039. Benandi, therefore, asserts that the trial court's acceptance of the Sworn Descriptive List and Judgment of Partition instead of requiring an inventory, was reversible error. We disagree.
LSA-C.C.P. art. 3136 provides that "[w]henever an inventory of succession property otherwise would be required by law ... The privilege of filing a descriptive list of succession property, in lieu of inventory thereof, may be exercised without judicial authority." Accordingly, we find no error with the trial court's decision to accept the Sworn Descriptive List and Judgment of Partition in lieu of the effects of the succession.
ASSIGNMENT OF ERROR NO. 2
Benandi's next assertion is that the ranking of the claims of Cusimano's creditors should have been determined according to the order of the seizure of Cusimano's interest in the succession and not according to the date of recordation of Cusimano's judgment creditors and lienholders. As is discussed below, Benandi's claim is partially correct.
Ebel recorded its consent judgments against Cusimano on January 7, 1982. Thereafter, Benandi recorded its judgment against Cusimano on December 8, 1983. The recordation of these judgments in the mortgage records of Orleans Parish resulted in a judicial mortgage in favor of those entities, LSA-C.C. art. 3321; see United Credit Plan of Gretna v. Pullen, 448 So. 2d 95 (La.1984), that could be enforced against all the immovables in Orleans Parish which the debtor actually owned or subsequently acquired, LSA-C.C. art. 3328; United Credit Plan of Gretna v. Pullen, 448 So.2d at 97-98. The judicial mortgage could also be enforced against property in the parish that the judgment debtor subsequently acquired by inheritance, as a judicial mortgage attaches to an heir's undivided share in the mortgageable property of a succession. Succession of Widow A.D. Tureaud v. Gex, 21 La.Ann. 253 (La.1869); Smith & McKenna v. Charles, 27 La.Ann. 503 (La.1875); "The Judicial Mortgage", 34 Tul.L.Rev. 768, 777 (1960). This occurs because the heir is considered seized of the succession from the moment of its being opened. LSA-C.C. arts. 940, 942. The right of possession, which the deceased had, continues in the person of the heir, as if there had been no interruption and independent of the fact of possession. LSA-C. C. art. 942. Each of the several heirs becomes an undivided proprietor of the effects of the succession for the part or portion coming to him. Succession of Tureaud v. Gex, 21 La.Ann. at 255; Smith & McKenna v. Charles, 27 La.Ann. at 504.
When an heir becomes the joint proprietor of mortgageable hereditary property, the mortgage resulting from the recording of a judgment against him attaches *247 to his part or portion thereof subject to the prior debts of the succession and dependent upon the final settlement of the succession. Succession of Tureaud v. Gex, 21 La.Ann. at 255. If after the mortgage attached to the property, the property is sold under an order of court, the mortgage then attaches to the proceeds of the sale which remain in the hands of the administrator. Succession of Tureaud v. Gex, 21 La.Ann. at 256.
The nature of a seizure, however, differs from that of the judicial mortgage which can be enforced only against the immovables owned or subsequently acquired by the debtor. Compare, LSA-C.C.P. arts. 2292 and 3328. Creditors of an heir may seize the undivided interest of an heir in a succession, Van Der Karr v. Stead, 21 So.2d 111, 112 (La.App. 1st Cir.1945); see also Vionche v. Brouillette, 50 La.Ann. 370, 23 So. 318 (1898), and as a result of the seizure, acquire a privilege on the interest running from the time of the seizure, LSA-C.C.P. art. 3511; LSA-C.C.P. art. 2292, entitling the seizing creditor to a preference over the debtor's ordinary creditors, LSA-C.C.P. art. 2292.
Thus, the impact of the seizures of Cusimano's interest in his aunt's succession by Benandi on February 16, 1984 and by Ebel on April 2, 1984, entitled those creditors to a preference over Cusimano's ordinary creditors on the seized interest, (movables as well as immovables) running from the date of their seizures.
Applying both seizure and judicial mortgage principles to the case at hand, we find the trial court erred by not ranking the privileges according to their nature. When Cusimano's creditors seized his undivided interest in the succession, the privilege that resulted primed the previously recorded judicial mortgages in regard to the effects of the succession that were not traceable to immovable property. For example, as to the bonds, the miscellaneous household effects and those portions of the $92,792.17 on deposit that are not traceable to immovables[8] once owned by the succession, Benandi and Ebel have preferred privileges, running in the order of their seizures. However, as to the immovables remaining in the succession and the proceeds of former immovables of the succession, the judicial mortgages are superior and attach in the order of their recordation.
For these reasons, the ruling of the trial court is amended in part and the case is remanded to the trial court for a new ruling on the Rule to Rank that is consistent with the views expressed in this opinion.
AMENDED IN PART AND REMANDED.
NOTES
[1] See also (former) LSA-C.C. art. 1990, the subject matter of which is now contained in LSA-C. C. art. 2044, Acts 1984, No. 331, § 1.
[2] The bankruptcy trustee disclaimed all interest in the Quartarro succession on August 31, 1987.
[3] Ebel's petition essentially adopted LSA-C.C.P. Form 893, the suggested form for petitions by creditors for authority to accept a succession under LSA-C.C. arts. 1071, 2044 and (former) 1990.
[4] LSA-C.C. art. 1055 provides:

At the expiration of the term for deliberating, the creditors and legatees of the succession can compel the heir to decide whether he accepts or rejects the succession, and they shall present a petition to this effect to the judge of the place where the succession is opened, who shall cause the beneficiary heir to be cited to answer thereto.
[5] LSA-C.C. art. 1072 provides:

If, on this demand, it is proved to the judge that the debtor refuses to accept the succession, or has renounced it to the prejudice of his creditors, he is bound to authorize the creditors to accept it in his stead; and it is the duty of the judge to cause immediately to be made an inventory of the effects of the succession, to appoint an administrator to manage them, sell them and pay the creditors, on his giving good and sufficient security for the fidelity of his administration, as in the case of acceptance with the benefit of inventory.
[6] See Schreiber v. Beer's Widow and Heirs, 150 La. 676, 91 So. 149 (1922), on rehearing; Iberville Bank & Trust Co. v. Zito, 169 La. 421, 125 So. 435 (1929); Succession of Menendez, 238 La. 488, 115 So.2d 829 (1959), rehearing den.; Callahan v. Authement, 77 So.2d 104 (La.App. 1st Cir.1954).
[8] See Succession of Tureaud v. Gex, 21 La.Ann. at 256.